MARIE BAPTISTE-ELMINE, JAVIER CRUZ,
FREDDY ELMINE, YVONNE JONES, ALICIA
LOMBARDO, OCHIEZE OKORONKWO,
PRECILIA OKORONKWO, REBECCA PEREZ,
ROSE PROPHETE, DICKSON REGALADO,
TYRONE STEWART, BARTHLOMY and
EUNICE OGBENNAYA

        Plaintiffs,

v.

RICHLAND & FALKOWSKI, PLLC and SN
SERVICING CORPORATION,

        Defendants.

21-cv-4994 (RPK) (PK)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT RICHLAND AND FALKOWSKI PLLC'S MOTION TO DISMISS
THE THIRD AMENDED COMPLAINT**

BROOKLYN LEGAL SERVICES
105 Court Street, 4th Floor
Brooklyn, NY  11201

LEGAL AID SOCIETY OF NEW YORK
153-01 Jamaica Avenue, Suite 202
Jamaica, NY  11432

*Attorneys for Plaintiffs*

MARIE BAPTISTE-ELMINE, JAVIER CRUZ,
FREDDY ELMINE, YVONNE JONES, ALICIA
LOMBARDO, OCHIEZE OKORONKWO,
PRECILIA OKORONKWO, REBECCA PEREZ,
ROSE PROPHETE, DICKSON REGALADO,
TYRONE STEWART, BARTHLOMY and
EUNICE OGBENNAYA

        Plaintiffs,

v.

RICHLAND & FALKOWSKI, PLLC and SN
SERVICING CORPORATION,

        Defendants.

21-cv-4994 (RPK) (PK)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT RICHLAND AND FALKOWSKI PLLC'S MOTION TO DISMISS
THE THIRD AMENDED COMPLAINT**

BROOKLYN LEGAL SERVICES
105 Court Street, 4th Floor
Brooklyn, NY 11201

LEGAL AID SOCIETY OF NEW YORK
153-01 Jamaica Avenue, Suite 202
Jamaica, NY 11432

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ......................................................................................... 2

ARGUMENT ............................................................................................................. 7

I. Upon a Motion to Dismiss Under Both Rule 12(b)(1) and Rule 12(b)(6), the Court Examines the Allegations in the Complaint ................................................................................. 7

II. Plaintiffs Have Alleged a Cognizable Injury and Have Standing to Sue Defendants Under the FDCPA in Federal Court .............................................................................................. 8

A. Plaintiffs' Allegations of Tangible Harms, Both Out of Pocket Costs and Lost Economic Opportunities, Support Their Standing to Redress Richland & Falkowski's FDCPA Violations...9

B. Plaintiffs' Allegations of Emotional Harms, and Resulting Physical Effects, Support Their Standing to Redress Richland & Falkowski's FDCPA Violations ................................................. 14

III. Defendant R&F's Foreclosure Complaints Are Subject to the Fair Debt Collection Practices Act and New York State Law ..................................................................................... 16

A. The Fair Debt Collection Practices Act Prohibits Attempts to Collect Time-Barred Debt in Mortgage Foreclosures ................................................................................................ 16

B. Foreclosure Plaintiffs Are Subject To New York State Law, Which Imposes a Statute of Limitations on Payments—Principal, Interest, and Other Charges—That Are More Than Six Years Past Due ............................................................................................................. 18

IV. Plaintiffs' Fair Debt Collection Practices Act Claims Are Well Pled, With Sufficient Factual Allegations To Support All Elements of the Claim .................................................. 19

A. Plaintiffs Have Properly Pled That Richland & Falkowski's Misstatements Violated 15 U.S. 1692(e) in That They Were Material and Misleading to the Least Sophisticated Consumer ....... 19

(i) Under the FDCPA, the Court must consider how the "least sophisticated consumer" would view a communication ............................................................................................ 19

(ii) When reviewed under the "least sophisticated consumer" standard, Richland & Falkowski's foreclosure complaints filed against Plaintiffs' homes brazenly seek time-barred debt ............... 20

B. Plaintiffs Have Property Pled That Richland & Falkowski Engaged in Conduct That Violated 15 U.S.C. § 1692f(1) by Seeking to Collect Payments That Are Not Permitted by New York State Law ......................................................................................................................... 23

i

CONCLUSION........................................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*53 Street, LLC v. U.S. Bank National Association*, 8 F.4th 74 (2d Cir. 2021) ............................ 18

*Arias v. Gutman, Mintz, Baker & Sonnenfeld LLP*, 875 F.3d 128 (2d Cir. 2017)........... 20, 23, 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) in turn quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ....................................................................................................................... 7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ...................................................................... 7

*Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72 (2d Cir. 2016)............................................ 17, 20

*Axon v. Fla's Nat. Growers, Inc.*, 813 Fed.Appx. 701 (2d Cir. 2020)........................................ 10

*Baptist v. Glob. Holding & Inv. Co.*, No. 04CV2365 DGT, 2007 WL 1989450 (E.D.N.Y. July 9, 2007)...................................................................................................................... 17

*Bay Park Ctr. for Nursing & Rehab. LLC v. Philipson*, 659 F.Supp.3d 312 (E.D.N.Y. 2023).... 13

*Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478 (1980)................................. 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 7

*Cameron v. L.R. Credit 22, LLC*, 998 F.Supp.2d 293 (S.D.N.Y. 2014)...................................... 17

*Campbell v. MBI Associates, Inc.*, 98 F.Supp.3d 568 (E.D.N.Y. 2015)...................................... 24

*Carter v. HealthPort Tech., LLC*, 822 F.3d 47 (2d Cir. 2016) ................................................... 9

*Cavazzini v. MRS Assocs.*, 574 F.Supp.3d 134 (E.D.N.Y. 2021) ................................................ 13

*CC Distributors, Inc. v. United States*, 883 F.2d 146 (D.C. Cir. 1989)...................................... 12

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ................................................... 7

*Clarke v. McCabe, Weisberg & Conway, LLC*, 2022 WL 3030347 (E.D.N.Y. Aug. 1, 2022)... 12, 13

*Cleveland v. Caplaw Enters.*, 448 F.3d 518 (2d Cir. 2006)........................................................ 7

*Clinton v. New York*, 524 U.S. 417 (1998) ................................................................. 9

*Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993) ................................................... 20

*Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75 (2d Cir. 2018) .......................... 16, 21, 22

*Cohoes Sav. Bank v. Blair*, 119 Misc.2d 153 (Sup. Ct. Saratoga Cty. 1983) ............................. 13

*Cortes-Goolcharran v. Rosicki, Rosicki, & Assocs., P.C.*, No. 17CV3976 FB SJB, 2018 WL 3748154 (E.D.N.Y. Aug. 7, 2018) ................................................................. 16

*Currier v. First Resolution Inv. Corp.,* 762 F.3d 529 (6th Cir. 2014) ......................................... 25

*Dean v. Town of Hempstead*, 527 F.Supp.3d 347 (E.D.N.Y. 2021) ............................................ 13

*Denny v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) ........................................................ 14

*Diaz v. Portfolio Recovery Assocs., LLC*, No. 10CV3920 MKB CLP, 2012 WL 1882976 (E.D.N.Y. May 24, 2012) ................................................................. 17

*Duffy v. Landberg,* 215 F.3d 871 (8th Cir. 2000) ......................................................................... 25

*Durden v. DNF Assocs. LLC*, 22CV799S SR, 2023 WL 2482638 (W.D.N.Y. Jan. 10, 2023) .... 13

*Easterling v. Collecto, Inc.*, 692 F.3d 229 (2d Cir. 2012) ........................................................... 23

*Finch v. Slochowsky & Slochowsky, LLP*, No. 19CV6273 RPK, 2020 WL 5848616 (E.D.N.Y. Sept. 30, 2020) ................................................................. 17, 24

*Fogel v. Credit Control, LLC*, 2023 WL 3739092 (S.D.N.Y. May 31, 2023) ............................... 24

*Frazier v. FCBC Community Dev. Corp.*, 2023 WL 8602914 (S.D.N.Y. Dec. 12, 2023) ........... 11

*Freedom Mortg. Corp. v. Engel*, 37 N.Y.3d 1 (2021) ................................................................. 19

*Gabriele v. Am. Home Mortg. Serv., Inc.*, 503 F.App'x 89 (2d Cir. 2012) ................................ 22

*Gold v. Shapiro, Dicaro & Barak, LLC*, No. 18CV6787 PKC JB, 2019 WL 4752093 (E.D.N.Y Sept. 30, 2019) ................................................................. 16, 17, 20

*Gray v. Metro. Det. Ctr.*, No. 09-cv-4520 KAM LB, 2011 WL 2847430, (E.D.N.Y. 2011) ......... 7

*Huber v. Simon's Agency*, 84 F.4th 132 (3d Cir. 2023) ............................................................ 12, 13, 14

iv

*John v. Whole Foods Mkt. Grp.*, 858 F.3d 732 (2d Cir. 2017) ...................................................... 10

*Khodara Env't, Inc. v. Blakey*, 376 F.3d 187 (3d Cir. 2004) ........................................................... 9

*Khoury v. Alger*, 174 A.D.2d 918 (3d Dep't 1991) ....................................................................... 18

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) ............................................ 25

*Leichliter v. Optio Solutions, LLC*, 672 F.Supp.3d 1165 (W.D. Okla 2023) ............................... 14

*Loiacono v. Goldberg*, 240 A.D.2d 476 (2d Dep't 1997) .............................................................. 18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................................... 9

*Mack v. Resurgent Capital Servs, L.P.*, 70 F.4th 395 (7th Cir. 2023) .......................................... 9

*Macris v. Specialized Loan Servicing, LLC*, 2022 WL 16727611 (2nd Cir. 2022) ..................... 25

*Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) ............................ 8

*Makarova v. U.S.*, 201 F.3d 110 (2d Cir. 2000) ........................................................................... 8

*Makhnevich v. Bougopoulos*, 2022 WL 939409 (E.D.N.Y. Mar. 29, 2022) ................................ 14

*Mantena v. Johnson*, 809 F.3d 721 (2d Cir. 2015) ...................................................................... 11

*Merced v. Resurgent Capital Servs., L.P.*, 2024 WL 1076519 (S.D.N.Y. March 12, 2024) ........ 11

*Mohnkern v. Equifax Info. Servs.*, LLC, No. 19CV6446L, 2021 WL 5239902 (W.D.N.Y. Nov. 10, 2021) ...................................................................................................................................... 17

*Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) ...... 8

*Morton v. O'Brien*, 2022 WL 969554 (S.D. Ohio Mar. 31, 2022) ............................................... 14

*Nance v. City of New York*, No. 90-cv-2786 ENV VVP, 2011 WL 2837491 (E.D.N.Y. July 14, 2011) ............................................................................................................................................... 7

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71 (2d Cir. 2013), *as amended* (Mar. 21, 2013) ............................................................................................................ 12

*Pagano v. Smith*, 201 A.D.2d 632 (2d Dep't 1994)); ................................................................... 18

*Rivera v. JP Morgan Chase Bank, N.A.*, 2023 WL 6276648 (D.D.C. Sept. 26, 2023) ............... 14

*Rodriguez v. Allstate Ins. Co.*, 33 Misc.3d 827 (Sup. Ct. Kings Cty. 2011) ................................ 13

*Rosen v. L J Ross Associates*, 19-CV-5516 (ARR) (VMS), 2021 WL 3112321 (E.D.N.Y. July 22, 2021)......................................................................................................................................... 17

*Rosenberg v. McCarthy, Burgess & Wolff, Inc.*, No. 21-CV-2199 (MKB), 2022 WL 3030390 (E.D.N.Y. Aug. 1, 2022) ........................................................................................................... 14

*Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2*, 18CV1781 PGG BCM, 2023 WL 6290622 (S.D.N.Y. Sept. 27, 2023) ......................................................................................................... 11

*Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82 (2d Cir. 2009)...................................................... 9

*Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004) .............................................................................. 7

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ........................................................................ 8, 14

*St. Pierre v. Dyer*, 208 F.3d 394 (2d Cir. 2000) ...................................................................... 12

*Stark v. Afni, Inc.*, 2023 WL 5278112 (S.D.N.Y. Aug. 16, 2023)............................................. 17

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998)........................................... 13

*Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015)........................................ 25

*Thome v. Sayer L. Grp., P.C.*, 567 F.Supp.3d 1057 (N.D. Iowa 2021) ................................. 12, 16

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ............................................................. 8, 9, 14

*U.S. Bank N.A. v. Atia,* 178 A.D.3d 747 (2d Dep't 2019) ........................................................ 18

*U.S. Bank N.A. v. Singer*, 192 A.D.3d 1182 (2d Dep't 2021)................................................... 18

*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) ..................................................................... 8

*Vangorden v. Second Round, Ltd .P'ship*, 897 F.3d 433 (2d Cir. 2018) ............................. passim

*Viernes v. DNF Assocs., LLC*, 582 F.Supp.3d 738 (D. Haw. 2022)............................................. 9

*Vincent v. The Money Store,* 736 F.3d 88 (2d Cir. 2013) ......................................................... 19

*Walker v. Pitnell*, 860 Fed. Appx. 210, 212 (2d Cir. 2021) ........................................ 22

*Weaver v. Boriskin*, 751 Fed. Appx. 96 (2d Cir. 2018) ............................................. 16

*Wells Fargo Bank, N. A. v. Burke*, 94 A.D.3d 980 (2d Dep't 2012) ........................... 18

*Wolkenfeld v. Portfolio Recovery Assocs., LLC*, No. 22-cv-1156 (PKC) (CLP), 2022 WL 1124828 (E.D.N.Y. Apr. 14, 2022) ............................................................... 11

## Statutes

15 U.S.C. § 1692 et seq. ................................................................................... passim

15 U.S.C. § 1692e. .................................................................. 14, 17. 19, 24, 25

15 U.S.C. § 1692f .................................................................................... 23, 24, 25

N.Y. C.P.L.R. § 213(4) ...................................................................................... 18

## Rules

Fed. R. Civ. P. 8(a)(2) ......................................................................................... 7

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 1, 7

## Treatises

13 Charles A. Wright et al., *Federal Practice and Procedure* § 3531.5 (2d ed. 1984) ............... 12

Plaintiffs Marie Baptiste-Elmine and Freddy Elmine, Javier Cruz and Rebecca Perez, Yvonne Jones, Alicia Lombardo, Ochieze and Precilia Okoronkwo, Rose Prophete, Dickson Regalado, Tyrone Stewart, and Batholmy and Eunice Ogbennaya (collectively "Plaintiffs") submit this memorandum of law in opposition to the motion of Defendant Richland & Falkowski PLLC ("R&F" or "Defendant") to dismiss Plaintiffs' Third Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). For the reasons stated below, all the causes of action in the Third Amended Complaint are properly pled and should not be dismissed.

**PRELIMINARY STATEMENT**

Plaintiffs have brought claims against collection attorneys Richland & Falkowski PLLC under the Fair Debt Collection Practices Act ("FDCPA") arising from its use of foreclosure filings threatening the Plaintiffs' homes and purporting to collect debts as many as 15 years past due, well beyond New York's six-year statute of limitations.[1] Faced with collection of deceptively inflated amounts that would result in the loss of their homes to foreclosure and dislocation of their families unless they filed an answer asserting a statute of limitations defense, Plaintiffs were forced to expend money, effort and time seeking competent counsel during the height of the COVID-19 pandemic when Courts and law offices were often closed or inaccessible. The stress of overinflated collection actions threatening their homes and the efforts to counteract those deceptive claims led Plaintiffs to suffer a range of intangible harms such as anxiety and depression, and resulting physical harms. R&F brought similarly deceptive lawsuits over 100 times during the height of the pandemic, seeking over $3 million in excess payments

---

[1] Plaintiffs' harms exemplify the continuing aftershocks homeowners experience from the dubious lending practices, such as "piggyback" loans that led to the 2007–08 foreclosure crisis. *See* CONSUMER FIN. PROT. BUREAU, What is a zombie second mortgage?, https://www.consumerfinance.gov/ask-cfpb/what-is-a-zombie-second-mortgage-en-2133/ (last reviewed May 6, 2024); CONSUMER FIN. PROT. BUREAU, What is a "piggyback" second mortgage, https://www.consumerfinance.gov/ask-cfpb/what-is-a-piggyback-second-mortgage-en-1955/ (last reviewed May 6, 2024).

from homeowners across New York State. Court records show the impacts of those lawsuits, including homes lost to foreclosure on account of time-barred debts and with excess and deceptive payments extracted from foreclosure defendants who lacked access to counsel or the ability to assert applicable statute of limitations defenses. R&F's deceptive collection efforts violated the FDCPA, and that the significant harms Plaintiffs experienced give them standing to pursue these claims in this Court. The motion to dismiss must therefore be denied.

## STATEMENT OF FACTS

Plaintiffs Javier Cruz and Rebecca Perez live with their children in their home, located at 132 Logan Street in the Cypress Hills neighborhood of Brooklyn. Third Amended Complaint ("TAC"), Docket Entry ("DE") 55 at ¶¶ 22–23. In the spring of 2021, Mr. Cruz and Ms. Perez were shocked to receive a summons and complaint commencing a foreclosure action on a second mortgage, for which they had never received a single mortgage statement and which they did not even know encumbered their property. *Id*. at ¶¶ 37–38. R&F's lawsuit, which purported to seek individual payments from May 1, 2009, sought at least $10,000 in interest payments and approximately $1,300 in principal that could not legally be collected because the payments were time-barred, sums that prevented resolution of the debt through state and local mortgage assistance programs, leading to thousands of dollars in excess attorney's fees to R&F. *Id.* at ¶ 38. Mr. Cruz and Ms. Perez were shocked, confused, shaken, and distraught; they were terrified to lose their home to foreclosure; they suffered insomnia and the stress aggravated Mr. Cruz's kidney disease. *Id*. at ¶¶ 41–42, 45. They were forced to expend money and time to assert the statute of limitations defense so that the overcharge could not be converted to a collectable debt resulting in the loss of their home to foreclosure. *Id*. at ¶ 42.

Plaintiffs Marie Baptiste-Elmine and Freddy Elmine live with their children in their home, located at 119-12 220th Street in the Cambria Heights neighborhood of Queens. *Id*. at ¶¶

46–47.  In the fall of 2020, Ms. Baptiste-Elmine and Mr. Elmine were shocked to receive a summons and complaint commencing a foreclosure on a long-dormant second mortgage, for which they had not received mortgage statements over many years, and which they thought had been consolidated into a loan modification of their first mortgage.  *Id*. at ¶¶ 59, 63.  R&F's lawsuit, which purported to seek collection of individual payments due from January 1, 2009, sought at least $14,500 in interest payments and approximately $1,500 in principal that could not legally be collected because the payments were time-barred, sums that prevented resolution of the debt and led to excess attorney's fees to R&F.  *Id*. at ¶¶ 63–64.  Ms. Baptiste-Elmine and Mr. Elmine were shocked, confused, panicked, depressed, and forced to expend resources to assert a legal defense; they suffered loss of trust between them and separated for at time as a couple; they suffered loss of sleep.  *Id*. at ¶¶ 66–67, 70.

Plaintiff Yvonne Jones lives with her husband in her home, located at 346 Lott Avenue in the Brownsville neighborhood of Brooklyn.  *Id*. at ¶¶ 71–72.  In the winter of 2021, Ms. Jones was confused to receive a summons and complaint commencing a foreclosure action on a long-dormant second mortgage, for which she had not received mortgage statements for many years. *Id*. at ¶¶ 81, 84.  R&F's lawsuit, which purported to seek collection of individual payments due from July 1, 2006, sought at least $59,000 in interest payments and approximately $2,800 in principal that could not legally be collected because the payments were time-barred, sums that prevented resolution of the debt and led to excess attorney's fees to R&F.  *Id*. at ¶ 85.  Ms. Jones was confused, stressed, panicked, suffered great mental strain, and forced to expend resources to assert a legal defense; she suffered headaches.  *Id*. at ¶¶ 87, 90.

Plaintiff Alicia Lombardo lives with her husband in her home, located at 204 Sherbrooke Avenue in Buffalo, in upstate New York.  *Id*. at ¶¶ 92–93.  In the spring of 2021, Ms. Lombardo

was confused to receive a summons and complaint commencing a foreclosure action on a long-dormant second mortgage, for which she had not received mortgage statements over many years. *Id*. at ¶¶ 106, 109. R&F's lawsuit, which purported to seek collection of individual payments due from May 1, 2010, sought at least $7,500 in interest payments and approximately $3,300 in principal that could not legally be collected because the payments were time-barred, sums that prevented early resolution of the debt and led to excess attorney's fees to R&F. *Id*. at ¶ 110, 114. Ms. Lombardo was forced to pay time-barred principal amounts to settle her debt and resolve the foreclosure. *Id*. at ¶ 116. Ms. Lombardo was stressed, fearful, depressed, embarrassed, and forced to expend resources to assert a legal defense; she lost sleep and began to suffer headaches. *Id*. at ¶¶ 112–13, 117.

Plaintiffs Ochieze and Precilia Okoronkwo live with their children in their home, located at 32-30 Mickle Avenue in the Eastchester neighborhood of the Bronx. *Id*. at ¶¶ 118–19. In the spring of 2021, Mr. and Mrs. Okoronkwo were shocked to receive a summons and complaint commencing a foreclosure action on a long-dormant second mortgage, for which they had not received mortgage statements over many years. *Id*. at ¶¶ 134, 138. R&F's lawsuit, which purported to seek collection of individual payments due from October 1, 2009, sought at least $42,000 in interest payments and approximately $2,700 in principal that could not legally be collected because the payments were time-barred, sums that prevented resolution of the debt and led to excess attorney's fees to R&F. *Id*. at ¶¶ 138–139, 142. Mr. and Mrs. Okoronkwo were shocked, stressed, fearful, and forced to expend resources to assert a legal defense; they lost trust in institutions they thought were there to protect them; they suffered insomnia and the stress aggravated Mr. Okoronkwo's high blood pressure. *Id*. at ¶¶ 138, 141, 143, 145.

Plaintiff Rose Prophete lives with her family in her home, located at 15 Paerdegat 6th

Street in the Canarsie neighborhood of Brooklyn.  *Id*. at ¶ 146.  In the spring of 2021, Ms. Prophete was confused to receive a summons and complaint commencing a foreclosure action on a long-dormant second mortgage, for which she had not received mortgage statements over nearly a decade, and which she had been informed by her servicer she was no longer required to pay.  *Id*. at ¶¶ 154-157.  R&F's lawsuit, which purported to seek collection of individual payments due from January 1, 2009, sought at least $29,000 in interest payments and approximately $3,400 in principal that could not legally be collected because the payments were time-barred, sums that prevented resolution of the debt and led to excess attorney's fees to R&F. *Id*. at ¶¶ 158. 161.  Ms. Prophete was shocked, terrified to lose her home, stressed, and forced to expend resources to assert a legal defense; she suffered panic attacks and impacts to her mood and relationships; she suffered insomnia.  *Id*. at ¶¶ 157, 163, 167.

Plaintiff Dickson Regalado lives with his children in his home, located at 132-11 85th Street in the Ozone Park neighborhood of Queens.  *Id*. at ¶¶ 168–69.  In the fall of 2020, Mr. Regalado was shocked to receive a summons and complaint commencing a foreclosure action on a long-dormant second mortgage.  *Id*. at ¶¶ 177, 178, 183.  R&F's lawsuit, which purported to seek collection of individual payments due from January 1, 2009, sought at least $20,000 in interest payments and approximately $2,800 in principal that could not legally be collected because the payments were time-barred, sums that prevented resolution of the debt and led to excess attorney's fees to R&F.  *Id*. at ¶ 184, 187. Mr. Regalado was shocked, terrified, anxious, depressed, and forced to expend resources to assert a legal defense; he was panicked and unable to sleep.  *Id*. at ¶¶ 183, 189, 191.

Plaintiff Tyrone Stewart lives in his home, located at 947 East 213th Street in the Williamsbridge neighborhood of the Bronx.  *Id*. at ¶ 192.  In the spring of 2021, Mr. Stewart was

confused to receive a summons and complaint commencing a foreclosure action on a long-dormant second mortgage, for which he had not received mortgage statements over many years. *Id*. at ¶¶ 204, 208. R&F's lawsuit, which purported to seek collection of individual payments due from July 16, 2009, sought at least $27,000 in interest payments and approximately $19,000 in principal that could not legally be collected because the payments were time-barred, sums that prevented resolution of the debt and led to excess attorney's fees to R&F. ¶¶ 208–09. 214. Mr. Stewart was confused, worried, stressed, and forced to expend resources to assert a legal defense; he feared he would lose his home to foreclosure; he is fearful and uncertain of his future and often unable to sleep. *Id*. at ¶¶ 211, 216.

Plaintiffs Barthlomy and Eunice Ogbennaya live with their children in their home, located at 818 East 232nd Street in the Wakefield neighborhood of the Bronx. *Id*. at ¶¶ 217–18. In 2021, Mr. and Mrs. Ogbennaya were shocked to receive a summons and complaint commencing a foreclosure action on a long-dormant second mortgage, for which they had not received mortgage statements over many years. *Id*. at ¶¶ 232, 233, 234. R&F's lawsuit, which purported to seek collection of individual payments due from April 1, 2009, sought at least $63,000 in interest payments and approximately $6,100 in principal that could not legally be collected because the payments were time-barred, sums that prevented resolution of the debt and led to excess attorney's fees to R&F. *Id*. at ¶¶ 235, 237, 238. Mr. and Mrs. Ogbennaya were shocked, frightened, embarrassed, and forced to expend resources to assert a legal defense; they felt under extreme pressure, fearful to lose their home to foreclosure. *Id*. at ¶¶ 234, 240, 241.

Public records reveal that R&F has represented BCMB1 Trust, NS194, STAR202, and related entities prosecuting nearly 100 foreclosure actions in the New York State courts, all but a handful unlawfully seeking payments barred by New York's statute of limitations, each a

violation of the FDCPA.  *Id*. at ¶¶ 244-45.  The amount of overdue debt R&F has sought to collect through these lawsuits totals nearly three million dollars.  *Id*. at 245.

## ARGUMENT

I. **Upon a Motion to Dismiss Under Both Rule 12(b)(1) and Rule 12(b)(6), the Court Examines the Allegations in the Complaint.**

In reviewing a motion under Rule 12(b)(6), the court examines a plaintiff's complaint to determine whether it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Gray v. Metro. Det. Ctr.*, No. 09CV4520 KAM LB, 2011 WL 2847430, at *6 (E.D.N.Y. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), in turn quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court must accept as true the complaint's factual allegations and draw all inferences in the plaintiff's favor.  *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *see also Nance v. City of New York*, No. 90CV2786 ENV VVP, 2011 WL 2837491, *1 (E.D.N.Y. July 14, 2011).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal* at 678.

Generally, when ruling on a Rule 12(b)(6) motion, a court may not consider facts outside the pleadings.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) ("Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires only that the complaint contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'") (citations omitted).  A court may consider only the complaint; documents either attached to the complaint or incorporated in it by reference; documents that, although not incorporated by reference, are "integral" to the complaint; and matters of which judicial notice may be taken.  *See, e.g.*, *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

In reviewing a motion to dismiss for lack of subject matter jurisdiction—here a challenge

to Plaintiffs' standing to sue under the Fair Debt Collection Practices Act—under Rule 12(b)(1), the Court must examine the allegations in the complaint and may refer to "evidence outside the pleadings." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A district court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) (internal citations omitted).

## II. Plaintiffs Have Alleged a Cognizable Injury and Have Standing to Sue Defendants Under the FDCPA in Federal Court

Plaintiffs here have established their standing by demonstrating three elements: 1) injury in fact that is "concrete, particularized, and actual or imminent," 2) that the injury "was likely caused by the defendant," and 3) redressability. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021). R&F challenges Plaintiffs' allegations in support of only the first two elements, injury in fact and causation, but the allegations in the Third Amended Complaint amply support all prongs of the analysis. R&F's narrow characterization of the required showing misconstrues the case law and Plaintiffs' allegations.

Plaintiffs have Article III standing because their injuries, both tangible and intangible, satisfy the requirements of injury in fact. To demonstrate an injury in fact, a plaintiff must show a) a concrete harm; b) a particularized injury; and c) an actual or imminent harm. *TransUnion*, 594 U.S. at 423; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–42 (2016). A harm is "concrete" if it "actually exists" or if it poses a material risk of future harm. *Spokeo*, 578 U.S. at 340, 341–42. An injury is "particularized" if it affects a plaintiff in a personal and individual way; an injury is "actual or imminent" if it is shown to not be "conjectural" or "hypothetical." *Lujan v. Defenders*

*of Wildlife*, 504 U.S. 555, 560 (1992). Here, the harm is not theoretical or conjectural—all of the Plaintiffs have been sued in foreclosure and were threatened with the loss of their homes to foreclosure as a result of R&F's attempts to collect time-barred mortgage debt. Plaintiffs allege two categories of injury that meet these requirements for injury in fact: (1) Plaintiffs allege tangible harms, including out of pocket costs and lost economic opportunities, resulting from R&F's violations of the FDCPA; (2) Plaintiffs allege emotional harms, analogous to harms deemed cognizable under common law torts, and resulting physical manifestations. Each of these injuries, which would separately sustain a standing inquiry, is "fairly traceable to the challenged action of the defendant," *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (quoting *Lujan*, 504 U.S. at 560), a standard that is lower than proximate causation and but-for causation. *See, e.g.*, *Viernes v. DNF Assocs., LLC*, 582 F.Supp.3d 738, 748 (D. Haw. 2022) (citing *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 195 (3d Cir. 2004)).

### A. Plaintiffs' Allegations of Tangible Harms, Both Out of Pocket Costs and Lost Economic Opportunities, Support Their Standing To Seek Redress For Richland & Falkowski's FDCPA Violations.

It is axiomatic that a financial or economic injury is sufficient to establish standing. *See, e.g.*, *Clinton v. New York*, 524 U.S. 417, 432 (1998); *TransUnion*, 599 U.S. at 417; *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82 (2d Cir. 2009). Indeed, "[a]ny monetary loss suffered by the plaintiff satisfies this element; even a small financial loss suffices." *Carter*, 822 F.3d at 55 (internal citations omitted); *see also Mack v. Resurgent Capital Servs, L.P.*, 70 F.4th 395, 406 (7th Cir. 2023) (finding that a postage fee of $3.95 satisfied the concrete harm requirement); *Viernes*, 582 F.Supp.3d at 756 (postage fee of $13.70).

Here, Plaintiffs have suffered tangible economic harms. Ms. Lombardo alleges a monetary harm by over-paying to resolve her foreclosure, including a payment for time-barred principal amounts. TAC at ¶ 116. *See also Axon v. Fla's Nat. Growers, Inc.*, 813 Fed.Appx.

701, 703–04 (2d Cir. 2020); *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017). This type of overpayment based on deceptive disclosures is the exact harm that the FDCPA's requirements are intended to prevent, and is directly traceable to R&F's illegal conduct. *See* the legislative purpose of the FDCPA, stated at 15 U.S.C. § 1692(e).

The Plaintiffs also allege that that they incurred financial harm in order to promptly respond to R&F's foreclosure complaint in order to timely assert a statute of limitations defense. *See* TAC at ¶ 42 (Mr. Cruz and Ms. Perez paid subway fare); ¶ 67 (Ms. Baptiste-Elmine and Mr. Elmine paid for gas, parking, and copies); ¶ 87 (Ms. Jones paid for parking fees and copies); ¶ 113 (Ms. Lombardo paid for gas); ¶ 141 (Mr. and Mrs. Okoronkwo paid for parking and copies); ¶ 186 (Mr. Regalado paid for subway fare and copies); ¶ 213 (Mr. Stewart lost wages[2]); ¶ 237 (Mr. and Mrs. Ogbennaya paid for gas and parking). Unlike others subject to foreclosure in the height of the COVID 19 pandemic, when state courts were largely closed, Plaintiffs could not delay or neglect answering their foreclosure complaints because of the significant financial consequences of R&F's illegal collection attempts. However deceptive an attempt to collect a time-barred debt under federal law, under state law the defense of a statute of limitations may be waived unlike other defenses to a foreclosure and, as conceded by R&F, unless "the borrower raises the affirmative defense at the appropriate time and in the appropriate manner." DE 15, R&F Pre-Motion Letter of Nov. 2, 2021, p. 2. Waiver of an answer and the statute of limitations defense would therefore effectively permit the collection—including execution of a judgment of foreclosure and sale and subsequent eviction—of time-barred sums through the foreclosure lawsuit. Review of the public record shows that other foreclosure defendants caught in R&F's scheme who did not timely assert their legal defenses were indeed compelled to pay for time-barred principal and interest. *See, e.g.*, Ex. 1 to Isobe Aff. (foreclosure summons filed under

Index No. 716201/2020); Ex. 2 to Isobe Aff. (foreclosure referee's report calculating judgment to include the entire principal alleged in the complaint and interest from March 2010 through September 30, 2021, which included time-barred amounts); Ex. 3 to Isobe Aff. (referee's report of foreclosure sale demonstrating collection of time-barred amounts). Plaintiffs' expenditure of these resources, therefore, was necessary because Plaintiffs "face[d] sufficient risk of harm . . . and then spen[t] time, money, and effort mitigating the risk." *Merced v. Resurgent Capital Servs., L.P.*, 2024 WL 1076519, *3 (S.D.N.Y. March 12, 2024) (citing *Wolkenfeld v. Portfolio Recovery Assocs., LLC*, No. 22-cv-1156 (PKC) (CLP), 2022 WL 1124828, *2 (E.D.N.Y. Apr. 14, 2022)); *see also Seaman v. Nat'l Collegiate Student Loan Tr. 2007-2*, 18CV1781 PGG BCM, 2023 WL 6290622 (S.D.N.Y. Sept. 27, 2023) (confirming a Report and Recommendation that found injury in fact for harms that included "incurring significant costs, both in time and money" to deal with harmful and inaccurate lawsuits that led to default judgments).

Plaintiffs also allege an additional economic injury that gives them standing to pursue their federal claims in the federal forum: lost economic opportunity to resolve the debt. Plaintiffs allege that if only the sums that could legally be collected were sought, they could have resolved their debt before the costs of litigation—including thousands of dollars of fees for each lawsuit that is added to mortgagors' indebtedness—had accumulated and made resolution impossible. *See* TAC at ¶ 43; ¶ 68; ¶ 88; ¶ 142; ¶ 161; ¶ 187; ¶ 214; ¶ 238. These types of lost economic opportunities are an injury in fact and therefore a basis for Article III standing. *See, e.g.*, *Frazier v. FCBC Community Dev. Corp.*, 2023 WL 8602914 at *3 (S.D.N.Y. Dec. 12, 2023); *Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015) ("[A] plaintiff suffers a constitutionally cognizable injury by the loss of an opportunity to pursue a benefit . . . even though the plaintiff may not be able to show that it was certain to receive that benefit had it been

accorded the lost opportunity.") (quoting *CC Distributors, Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989)); *Thome v. Sayer L. Grp., P.C.*, 567 F.Supp.3d 1057, 1077–78 (N.D. Iowa 2021) (injury in fact due to tangible harm may be found where conflicting information from debt collector caused the plaintiff to miss a chance to deal promptly with her debt and caused her to pay more in foreclosure); *Huber v. Simon's Agency*, 84 F.4th 132, 149 (3d Cir. 2023) (finding standing when a misleading notice caused a consumer to fail to pay down her debts). The Plaintiffs' allegations in the Third Amended Complaint differ from those found wanting in *Clarke*, where the plaintiff merely alleged inaction. *Clarke v. McCabe, Weisberg & Conway, LLC*, 2022 WL 3030347, *5 (E.D.N.Y. Aug. 1, 2022). Here, Plaintiffs identify specific economic opportunities—grant and loan mortgage assistance programs then-available to homeowners in New York—that they could otherwise have utilized to resolve their debts. *See* TAC at ¶ 43; ¶ 66; ¶ 68; ¶ 88; ¶ 142; ¶ 161; ¶ 187; ¶ 214; ¶ 238.

These injuries were in no way "self-inflicted," as asserted by R&F, *see* R&F Mem. at p 12, but instead were essential to mitigate damage and avoid default and the risk of owing tens of thousands of dollars in illegally imposed fees. "An injury is self-inflicted so as to defeat the causation necessary to establish standing . . . only if . . . the injury is so completely due to the plaintiff's own fault as to break the causal chain." *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013), *as amended* (Mar. 21, 2013) (internal citation omitted). "So long as [the defendant] ha[s] engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing." *St. Pierre v. Dyer*, 208 F.3d 394, 403 (2d Cir. 2000) (citing 13 Charles A. Wright et al., *Federal Practice and Procedure* § 3531.5, at 461 (2d ed. 1984)). None of the authorities relied upon by R&F support the contention that Plaintiffs' economic injury here was self-inflicted. *Nat. Res. Def. Council, Inc.*, 710 F.3d at 85

(plaintiff's purchase of soap with triclosan was not self-inflicted and did not defeat standing); *Dean v. Town of Hempstead*, 527 F.Supp.3d 347, 403 (E.D.N.Y. 2021) (plaintiff's procedures taken to obtain permits did not defeat standing).

Nor do the economic harms asserted constitute a violation of the "American Rule" that litigants bear their own fees. Plaintiffs here have not asserted any costs and fees associated with this action as the basis for their Article III standing. Accordingly, the decisions relied upon by R&F are inapposite. *Cf. Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 109 (1998) (attorney's fees to bring a litigation are not sufficient to confer Article III standing for *that* litigation); *Cavazzini v. MRS Assocs.*, 574 F.Supp.3d 134, 144 (E.D.N.Y. 2021) (same); *Clarke*, 2022 WL 3030347 at *2 (plaintiff merely discussed a "useless" letter with counsel); *Bay Park Ctr. for Nursing & Rehab. LLC v. Philipson*, 659 F.Supp.3d 312, 317 (E.D.N.Y. 2023) (calculating a fee award for shareholder lawsuit over insurance premiums); *Cohoes Sav. Bank v. Blair*, 119 Misc.2d 153, 155 (Sup. Ct. Saratoga Cty. 1983) (state court decision denying attorney's fees in a mortgage foreclosure); *Rodriguez v. Allstate Ins. Co.*, 33 Misc.3d 827, 834 (Sup. Ct. Kings Cty. 2011) (state court decision denying attorney's fees in contract case).

The harm asserted is not equivalent to a request of a fee award nor attempts to bootstrap jurisdiction by citing the litigation costs of bringing the litigation itself. Rather, the economic harms alleged are analogous to the fees associated with responding to a threat to sue or a collection letter, which have been held to establish Article III standing. *See, e.g.*, *Huber*, 84 F.4 at 143 (financial cost of seeking assistance from a professional to interpret a letter sent in violation of the FDCPA confers standing); *Durden v. DNF Assocs. LLC*, 22CV799S SR, 2023 WL 2482638, at *2 (W.D.N.Y. Jan. 10, 2023) (injury in fact established through, inter alia, costs to hire a lawyer to defend against defendant's debt collection lawsuit).

**B. Plaintiffs Allegations of Emotional Harms, and Resulting Physical Effects, Support Their Standing To Redress Richland & Falkowski's FDCPA Violations.**

Plaintiffs have also demonstrated injury in fact by pleading emotional and psychological harms that stem from Defendant's illegal conduct analogous to cognizable harms under common law torts. To determine if an intangible harm confers Article III standing, courts may look to (1) the history and the judgment of Congress and (2) a "close relationship" to an analogous harm that has traditionally been recognized to provide a basis for a lawsuit in English or American courts. *Spokeo*, 578 U.S. at 340–41. "[A] plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm." *TransUnion*, 594 U.S. at FN7. *See also Denny v. Deutsche Bank AG*, 443 F.3d 253, 265 (2d Cir. 2006) ("The risk of future harm may also entail economic costs . . . but aesthetic, emotional, or psychological harms also suffice for standing purposes."). Courts will also recognize such intangible injuries to confer standing if they manifest themselves in physical ailments such as elevated blood pressure, stomach aches, and migraines. *See, e.g.*, *Makhnevich v. Bougopoulos*, 2022 WL 939409 at *5 n. 7 (E.D.N.Y. Mar. 29, 2022) (Matsumoto, J.); *Rivera v. JP Morgan Chase Bank, N.A.*, 2023 WL 6276648, at *3 (D.D.C. Sept. 26, 2023); *Leichliter v. Optio Solutions, LLC*, 672 F.Supp.3d 1165, 1170 (W.D. Okla 2023); *Morton v. O'Brien*, 2022 WL 969554 at *2–*3 (S.D. Ohio Mar. 31, 2022) (collecting cases). Courts have found violations of § 1692e to be analogous to the tort of fraudulent misrepresentation. *See, e.g.*, *Huber*, 84 F.4th at 148; *Rosenberg v. McCarthy, Burgess & Wolff, Inc.*, No. 21-CV-2199 (MKB), 2022 WL 3030390, at *4 (E.D.N.Y. Aug. 1, 2022). A plaintiff thus has standing if their intangible harm flows from these, and similar, violations of the FDCPA.

Here, Plaintiffs suffered intangible injuries from the shock of debts that stretched to as much as a decade of interest, without a reasonable hope of resolution because of the high

amounts of apparent debt. As homeowners facing down the loss of their home at the height of the pandemic, these mountains of overstated debt and the lack of seeming economic opportunities for resolution led to increased and exacerbated fear, insomnia, stress, shock, confusion, panic, marital strife, familial tension and trauma, anxiety, depression, and embarrassment that resulted from R&F's suing on time-barred amounts. *See* TAC at ¶ 41 (shock and terror of losing their home); ¶ 66, 70 (confusion, terror, panic, stress, loss of marital trust); ¶ 90 (great mental strain, fear, stress, and panic); ¶ 112, 117 (stress, confusion, fear, depression); ¶ 137, 143 (stress, shock, worry, terror, loss of trust); ¶ 157, 163 (shock, terror, stress, impacts to relationships); ¶ 183, 189 (shock, terror, anxiety, depression); ¶ 211, 216 (stress, worry, fear); ¶ 234, 237, 240, 241 (shock, fear, embarrassment, frustration, alarm). These emotional harms resulted in physical harms. *See* TAC at ¶ 41 (aggravated kidney disease, loss of sleep); ¶ 70 (lack of sleep); ¶ 90 (headaches); ¶ 117 (headaches, sleeplessness); ¶ 143 (stress, loss of sleep, headaches); ¶ 163 (panic attacks, impacts to mood, loss of sleep); ¶ 189 (anxiety, depression, loss of sleep); ¶ 216 (depression, loss of sleep); ¶ 241 (extreme mental pressure).

The stated harms resulted from the inflated demands in the foreclosure complaints—which included unlawful claims for time-barred debt—and from the stress that they were being pursued in court, at risk of losing their homes, for sums that should not legally be collected. *See* TAC at ¶ 41 (Mr. Cruz and Ms. Perez's fear of losing their home and being evicted) "because they did not believe they could pay off the total for all of the years of payments sought in the Complaint"); ¶ 66 (Ms. Baptiste-Elmine and Mr. Elmine "terrified they would lose their home, because they did not believe that they could pay off the total for all of the years of payments sought in the foreclosure complaint"); ¶ 90 (Ms. Jones' fear "because she did not believe she could pay off the total for all the years of payments sought in the Complaint"); ¶ 112, ¶ 143; ¶

15

163; ¶ 189; ¶ 211; ¶ 240. Although Plaintiffs do not dispute that they are behind on their second mortgage debts—albeit due to lenders' and servicers' failures to provide accurate notices and service the mortgage debt—nonetheless, R&F's significant inaccuracies and overstatement of the debt foreseeably increased their hardship, mental anguish, and resulting physical effects. *See, e.g.*, *Thome*, 567 F.Supp.3d at 1078–79 ("Although plaintiff was distressed due to the letter's news of the foreclosure, defendant's misrepresentation exacerbated that distress. Thus, defendant was a cause of her distress and her recovery cannot be precluded just because defendant is not the only cause.")

## III. Defendant R&F's Foreclosure Complaints Are Subject to the Fair Debt Collection Practices Act and New York State Law.

In New York, foreclosure plaintiffs and their counsel are subject to both the federal Fair Debt Collection Practices Act and New York State law governing the collection of long-overdue debts. The law on these subjects is clear and settled and provides certain and consistent guiderails to conscientious foreclosure litigants and attorneys who take care with their pleadings.

### A. The Fair Debt Collection Practices Act Prohibits Attempts To Collect Time-Barred Debt in Mortgage Foreclosures.

It is well-established in the Second Circuit that foreclosure proceedings are an "attempt to collect on a debt" under the FDCPA. *See, e.g.*, *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 82 (2d Cir. 2018); *Gold v. Shapiro, Dicaro & Barak, LLC*, No. 18CV6787 PKC JB, 2019 WL 4752093, *5-6 (E.D.N.Y Sept. 30, 2019). R&F does not dispute that the filing of a foreclosure lawsuit is a "communication" subject to the FDCPA. *Cohen*, 897 F.3d at 75; *Weaver v. Boriskin*, 751 Fed. Appx. 96 (2d Cir. 2018). Attempts to collect time-barred mortgage amounts constitute "deceptive means" and thus violate the FDCPA. *See Cortes-Goolcharran v. Rosicki, Rosicki, & Assocs., P.C.*, No. 17CV3976 FB SJB, 2018 WL 3748154 (E.D.N.Y. Aug. 7, 2018) (plaintiff stated a claim under the FDCPA in alleging that attorney and servicer sent

homeowner a statutory 90-day notice threatening foreclosure on a time-barred foreclosure debt); *Cameron v. L.R. Credit 22, LLC*, 998 F.Supp.2d 293, 300 (S.D.N.Y. 2014) (filing a lawsuit to collect time-barred debt is a violation of the FDCPA and plaintiff stated a claim); *Diaz v. Portfolio Recovery Assocs., LLC*, No. 10CV3920 MKB CLP, 2012 WL 1882976 (E.D.N.Y. May 24, 2012) (same); *Baptist v. Glob. Holding & Inv. Co.*, No. 04CV2365 DGT, 2007 WL 1989450 (E.D.N.Y. July 9, 2007) (letter threatening to sue on time-barred debt is a violation of FDCPA § 1692e(5)); *Gold*, 2019 WL 4752093.

Moreover, an attempt to collect a debt, even part of which is non-collectable, is a violation of the FDCPA. *See, e.g.*, *Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 442 (2d Cir. 2018) ("[E]ven a partial misstatement of consumer's debt obligation can be misleading under the FDCPA.") (citing *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 76 (2d Cir. 2016)). Consistent with other holdings in this Circuit, this Court has held that filing a lawsuit to collect a debt, part of which is non-collectable, is a violation of the FDCPA.[2] In *Finch v. Slochowsky & Slochowsky, LLP*, No. 19CV6273 RPK, 2020 WL 5848616, at *4 (E.D.N.Y. Sept. 30, 2020), where the complaint alleged that the defendants sought to collect rent from plaintiff that she did not owe, this Court rejected the defendant's argument that plaintiff's pleadings were inadequate because plaintiff "has not disputed that she still owed *some* of the rent that [the defendant] sought." (emphasis in original). The Court held: "This argument is also meritless, however, because Section 1692e proscribes 'even a partial misstatement of a consumer's debt obligation.'" (quoting *Vangorden*, 897 F.3d at 442.). *See also Rosen v. L J Ross Assocs.*, 19-CV-5516 (ARR)

---

[2] *Cf. Mohnkern v. Equifax Info. Servs.*, LLC, No. 19CV6446L, 2021 WL 5239902 *8 (W.D.N.Y. Nov. 10, 2021) (FDCPA claims dismissed where the plaintiffs did not allege deceptive collection attempts, but merely made "conclusory and self-serving allegations that they do not owe the debt"); *Stark v. Afni, Inc.*, 2023 WL 5278112 *4 (S.D.N.Y. Aug. 16, 2023) (plaintiff did not establish that he disputed the alleged debt.

(VMS), 2021 WL 3112321 at *4 (E.D.N.Y. July 22, 2021) (collection letter overstating amount of an alleged debt by $100 "could reasonably be interpreted as a "false representation" of the amount of plaintiff's debt," and "violates the FDCPA.") (citing *Vangorden*, 897 F.3d at 442.).

**B. Foreclosure Plaintiffs Are Subject To New York State Law, Which Imposes a Statute of Limitations on Individual Monthly Payments—Principal, Interest, and Other Charges—That Are More than Six Years Past Due.**

New York's Civil Practice Law and Rules establishes a six-year statute of limitations on mortgage foreclosure actions. N.Y. C.P.L.R. § 213(4). In addition, "[t]he law is well settled that with respect to a mortgage payable in installments, there are 'separate causes of action for each installment accrued, and the Statute of Limitations [begins] to run, on the date each installment [becomes] due unless the mortgage debt is accelerated.'" *Loiacono v. Goldberg*, 240 A.D.2d 476, 477 (2d Dep't 1997) (citing *Pagano v. Smith*, 201 A.D.2d 632, 633 (2d Dep't 1994)); *Khoury v. Alger*, 174 A.D.2d 918 (3d Dep't 1991); *see also 53 Street, LLC v. U.S. Bank National Association*, 8 F.4th 74, 78 (2d Cir. 2021) (citing *Wells Fargo Bank, N. A. v. Burke*, 94 A.D.3d 980, 982 (2d Dep't 2012)). The New York State legislature set forth in clear terms that payments which are overdue by more than six years are time-barred. Accordingly, the appellate courts in New York have repeatedly held that the holder of a mortgage cannot seek payment of installments that became due more than six years prior to the commencement of a foreclosure action. *See, e.g.*, *U.S. Bank N.A. v. Singer*, 192 A.D.3d 1182 (2d Dep't 2021) (even if the entire mortgage balance was not barred by the statute of limitations, the statute of limitations remains a defense with regard to individual payments that accrued more than six years prior to the filing of the foreclosure action; *U.S. Bank N.A. v. Atia,* 178 A.D.3d 747, 749 (2d Dep't 2019) ("…the defendant established that any unpaid installments of the mortgage which accrued before the six-year period prior to the commencement of this mortgage foreclosure action…. are time-barred.").

18

Moreover, the Court of Appeals of New York "[has] repeatedly recognized the important objectives of certainty and predictability served by our statutes of limitations and endorsed by our principles of contract law, particularly where the bargain struck between the parties involves real property." *Freedom Mortg. Corp. v. Engel*, 37 N.Y.3d 1, 20 (2021) (citations omitted); *see also Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 487 (1980) ("Statutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system.").

## IV. Plaintiffs' Fair Debt Collection Practices Act Claims Are Well Pled, With Sufficient Factual Material to Support All Elements of the Claim.

### A. Plaintiffs Have Properly Pled That Richland & Falkowski's Misstatements Violated 15 U.S.C. § 1692e in That They Were Material and Misleading to the Least Sophisticated Consumer.

*(i) Under the FDCPA, the Court must consider how the "least sophisticated consumer" would view a communication.*

As noted above, section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This prohibition encompasses the "false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2). The Second Circuit has repeatedly held that Courts are to construe the FDCPA text "liberally to effectuate the overriding statutory purpose, which is to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Vangorden*, 897 F.3d at 437 (citing *Avila*, 817 F.3d at 75); *see also Vincent v. The Money Store,* 736 F.3d 88, 98 (2d Cir. 2013).

The court's assessment of whether a debt collector's communication violated the FDCPA is based on the "least sophisticated consumer" standard. *See, e.g.*, *Avila*, 817 F.3d at 75; *Clomon*

*v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). Under this standard, a debt collector's collection notice can be deceptive if it is "open to more than one reasonable interpretation, at least one of which is inaccurate." *Gold*, 2019 WL 4752093 at *7 (citing *Avila*, 817 F.2d at 75, in turn quoting *Clomon*, 988 F.2d at 1319); *see also Arias v. Gutman, Mintz, Baker & Sonnenfeld LLP*, 875 F.3d 128 (2d Cir. 2017) ("We analyze the reasonableness of an interpretation from the perspective of the 'least sophisticated consumer,'[] who, we have explained, lacks the sophistication of the average consumer and may be naïve about the law, but is rational and possesses a rudimentary amount of information about the world.") (internal citations omitted). The use of this standard "ensures the protection of all consumers, even the naïve and the trusting, against deceptive debt collection practices." *Clomon*, 988 F.2d at 1320.

> *(ii) When reviewed under the "least sophisticated consumer" standard, R&F's foreclosure complaints filed against Plaintiffs' home brazenly seek time-barred debt.*

R&F argues that the amount of the debt in dispute is *de minimus* and not material. In doing so, they disingenuously assert that the "crux of the Plaintiffs' claim is that the amounts lawfully due under the various mortgage foreclosure complaints, after the assertion of the Statute of Limitations defense, is different from the amount demanded . . . as to the principal balance." R&F Mem. at p. 18. R&F then offers a chart to demonstrate that the principal balance demanded in the foreclosure complaints is only a "*de minimus*" amount larger than the principal balanced admitted by the Plaintiffs in their TAC. With the exception of two Plaintiffs, the chart shows that the percentage of principal in dispute ranges from 3.2 % to 5.9 %. R&F. Mem. at p. 19.

R&F's chart, however, completely ignores the large amount of time-barred *interest* that is set forth in the TAC with respect to every Plaintiff. For example, while the chart indicates that the principal amount Ms. Prescott alleges was sought from her was $2,800 more than what was legally collectable (representing a percentage dispute of 4.3%), Ms. Prescott also alleges that the

foreclosure complaint seeks at least $59,000, in interest payments that are time-barred, by demanding nearly 15 years of payments, when only six years could legally be sought. TAC at ¶ 85. The remaining plaintiffs allege that the foreclosure complaints seek time barred interest ranging from $7,500 to $63,000. *See* TAC at ¶¶ 38, 64, 110, 139, 158, 184; 209; 235.

R&F erroneously argues that under the "least sophisticated consumer standard," Plaintiffs would understand, after reading the foreclosure complaints, that "the sums sought in the FC complaints are the maximum amount that can be sought and that the Supreme Court may award less." As described in detail in Defendant's motion, each foreclosure complaint at issue in this case comports exactly with Plaintiffs' allegations: each seeks an overstated principal balance and interest "accrued and[] owing" from the date of default listed, which date was between 11 and 15 years prior to the date of filing. R&F. Mem. at p. 18; TAC at ¶¶ 38, 64, 78, 85, 110, 139, 158, 181, 209, 235. While R&F argue that the language that they cite in the boilerplate "'WHEREFORE' clause" would limit their pleadings to a supposed maximum sought, R&F Mem. at pp. 20–21, the language Defendant quotes offers no such explicit limitation understandable to the "least sophisticated consumer." The clause is weighed down with legalese nearly incomprehensible to an average consumer, let alone one that is "unsophisticated," as the law admonishes. Moreover, since the outcome of a foreclosure is not a money judgment, but the sale of the home (and possibly the eventual eviction of the homeowner), the least sophisticated consumer will understandably fear from the language of the complaint that they will lose their home because they did not make payments that became due over a decade ago.

While "FDCPA protection does not extend to every bizarre or idiosyncratic interpretation of a collection notice," *Cohen*, 897 F.3d at 85, here it is *R&F's* interpretation of its own complaints that is idiosyncratic. Plaintiffs' understanding was in accordance with the plain

meaning of the text and they have properly pled a blatant violation of the FDCPA.

In the Second Circuit, Courts employ a qualitative materiality standard for deceptive, misleading, or unconscionable statements under scrutiny for violations of the FDCPA. "In other words, a false statement is actionable under the FDCPA only if it has the potential to affect the decision-making process of the least sophisticated consumer." *Cohen*, 897 F.3d at 85 (internal citations omitted). "'[C]ommunications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA.'" *Id.* at 86 (quoting *Gabriele v. Am. Home Mortg. Serv., Inc.*, 503 Fed.Appx. 89, 94 (2d Cir. 2012)). There is no bright line mathematical calculation for material misstatement in this Circuit, and certainly not a 10% "general rule of thumb" that Defendant conjures without support in the statute or case law.[3]

The demand in the foreclosure complaints for interest which accrued since as long ago as 2006, between five and nine years beyond what is permitted under New York state law, is unquestionably misleading as to the "character, amount, or legal status" of the debt. Unlike the misrepresentations in *Walker v. Pitnell*, 860 Fed. Appx. 210, 212 (2d Cir. 2021), cited by R&F, where the defendant merely misidentified a creditor's identity, the misstatements alleged by Plaintiffs are substantial and meet the Second Circuit's qualitative materiality standard. Presented with a debt that appeared to be tens of thousands of dollars greater than could legally be collected—well beyond *de minimis*—particularly with their homes and families at stake, an unsophisticated consumer would alter their decisions about how to proceed. For example, such

---

[3] The court in *Cicalo v. McCalla*, 2017 WL 3444675 (D. Conn. 2017), invoked by R&F in support of this supposed "rule of thumb," did not set forth any mathematical bright line rule. The Court merely cited two decisions from the 4th Circuit Court of Appeals which held that a 50% and 10.5% overstatement was not *de minimis*. *Id.* at *9. Moreover, that case's discussion was superseded less than one year later by the qualitative standard for materiality set out by the Second Circuit in *Cohen*, 897 F.3d at 85–86.

an inflation would influence whether and how to negotiate with an unknown plaintiff, what terms to accept in settlement, how to prioritize existing obligations, and even whether to sell their home.  *See Vangorden*, 897 F.3d at 442 (upon receipt of an inaccurate and misleading debt collection effort, "a consumer—and particularly, a least sophisticated consumer—might . . . make payment anew out of fear and confusion") (internal citations omitted).

The key consideration here is not how these flagrant misstatements would mislead these particular Plaintiffs but how they would mislead the least sophisticated consumer.  *See Arias*, 875 F.3d at 137 ("In *Easterling*, we rejected the debt collector's argument that the plaintiff was never actually misled, holding that 'the operative inquiry . . . is whether the hypothetical least sophisticated consumer' would be misled by the debt collector's misrepresentation.") (citing *Easterling v. Collecto, Inc.*, 692 F.3d 229 (2d Cir. 2012)).  Hence, it is of no moment whether Plaintiffs themselves were able to obtain counsel, determine the inaccuracy, and bring this lawsuit.  The question is what the least sophisticated consumer would think or do.   Moreover, the case law in the Second Circuit does not require Plaintiffs to meet or plead a specific dollar or percent of inaccuracy; Plaintiffs amply state a material misstatement.

**B.     Plaintiffs Have Properly Pled That Richland & Falkowski Engaged in Conduct That Violated 15 U.S.C. § 1692f(1) by Seeking to Collect Payments That Are Not Permitted by New York State Law.**

Pursuant to 15 U.S.C. § 1692f, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  This section describes eight types of conduct which violate the statute, one of which states: "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  The Plaintiff's TAC alleges that R&F violated this provision by seeking to collect payments that are time-barred under New York State Law.  R&F argues that the only way to

properly plead a violation of U.S.C. § 1692f is to allege "practices that are 'shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness.'" R&F Mem. at p. 16 (citing *Arias*, 875 F.3d at 135, which relies on Black's Law Dictionary definitions). R&F contends that Plaintiffs' claim with respect to 15 U.S.C. § 1692f is not well pled in the TAC and does not explain, specifically, what is "shockingly unjust or unfair" about the mortgage foreclosure complaints under 15 U.S.C. § 1692f. *Id*. at p. 17.

R&F's argument reflects a fundamental misunderstanding of this prong of the statute. In *Vangorden*, the Second Circuit held that a plausible allegation that a defendant "attempted to collect a debt amount not 'expressly authorized by the agreement creating the debt or permitted by law' constitutes a violation of § 1692f(1), because the list constitutes examples of unfair or unconscionable conduct . . . without need for further allegations of unfairness or unconscionability." 897 F.3d at 438 (internal citations omitted); s*ee also Campbell v. MBI Associates, Inc*., 98 F.Supp.3d 568, 582 (E.D.N.Y. 2015); *Finch*, 2020 WL 5848616 at *4 ("[P]laintiff pleads . . . that S&S's fifth lawsuit sought to collect from her at least two months of rent that Gates LLC had already received. That attempt to collect debt not owed would, if substantiated, constitute a violation of Section 1692f(1)").

R&F also argues that Plaintiffs claim under § 1692f(1) should be dismissed because it is based on the same conduct that forms the basis of its misrepresentation claim under § 1692e(2), citing *Fogel v. Credit Control, LLC*, 2023 WL 3739092, at *7 (S.D.N.Y. May 31, 2023). R&F. Mem. at p. 17. The Second Circuit, however, has explicitly rejected this argument in *Arias*, 875 F.3d at 135 ("GMBS argues that sections 1692e and 1692f are mutually exclusive and that the same conduct by a debt collector cannot violate both sections at once. *We disagree* (emphasis added)) (citing *Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015), which

affirmed certification of a class alleging that the same scheme violated sections 1692e and 1692f. *See also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1202 (11th Cir. 2010); *Currier v. First Resolution Inv. Corp.,* 762 F.3d 529, 536 (6th Cir. 2014) ("While misleading practices under § 1692e and 'unfair' practices under § 1692f reference separate categories of prohibited conduct, they are broad, potentially overlapping, and are not mutually exclusive. A debt collector's action could be 'misleading' under § 1692e, 'unfair' under § 1692f, or, as alleged here, both."); *Duffy v. Landberg,* 215 F.3d 871, 874–75 (8th Cir. 2000). Accordingly, R&F's violation is the basis for a violation of both § 1692e(2) and § 1692f.

Plaintiffs' TAC sets forth a plausible violation of 15 U.S.C § 1692f(1) as each Plaintiff alleges that the mortgage complaints sought to collect installment payments that became due more than six years before the commencement of the foreclosure in violation of the well-established law in New York. TAC at ¶¶ 38, 64, 85, 110, 139, 158, 184, 209, 235 and 254. Accordingly, R&F's motion to dismiss Plaintiffs' claim under § 1692f(1) should be denied.[4]

## CONCLUSION

For the above reasons, R&F's Motion to Dismiss should be denied in its entirety.

Dated: May 13, 2024
      Brooklyn, New York

          Respectfully submitted,

          *Catherine Isobe*
          MARIO FITZGERALD
          RACHEL GEBALLE
          TERRY HERMAN
          CATHERINE P. ISOBE
          Brooklyn Legal Services

---

[4] R&F's reliance on *Macris v. Specialized Loan Servicing, LLC*, 2022 WL 16727611 *2 (2nd Cir. 2022) (summary order) is misplaced. In *Macris*, the Court dismissed all of the plaintiff's claims because the plaintiff in fact owed the *entire* debt that he disputed.

105 Court Street, 4th Floor
Brooklyn, New York 11201

JENNIFER LEVY
Legal Aid Society of New York
153-01 Jamaica Avenue, Suite 202
Jamaica, New York 11432

*Attorneys for Plaintiffs*