**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARIE BAPTISTE-ELMINE, et. al.,<br><br>     Plaintiff,<br><br>vs.<br><br>RICHARD & FALKOWSKI, PLLC, and<br>SN SERVICING CORPORATION,<br><br>     Defendants. | Case No.: 1:21-cv-04994-RPK-PK |

## SNSC'S MEMORANDUM OF LAW IN SUPPORT
## OF ITS MOTION TO DISMISS, OR ALTERNATIVELY STAY,
## PLAINTIFFS' THIRD AMENDED COMPLAINT

On the Brief:

Thomas R. Dominczyk

<br>

Thomas R. Dominczyk
**MAURICE WUTSCHER, LLP**
5 Walter E. Foran Blvd.
Suite 2007
Flemington, NJ 08822
(908) 237-4550
tdominczyk@mauricewutscher.com
*Attorneys for Defendant,*
*SN Servicing Corporation*

Date: April 5, 2024

# TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................... **1**

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY** ............................................ **3**

   I.    A. THE OKORONKWOS' ALLEGATIONS. ............................................................ 3

   II.   B. PROPHETE'S ALLEGATIONS. ..................................................................... 4

   III.  C. REGALADO'S ALLEGATIONS. ................................................................... 5

   IV.  D. JONES' ALLEGATIONS. ........................................................................... 6

   V.   THE ELMINES' ALLEGATIONS ...................................................................... 7

**STANDARD OF REVIEW** ......................................................................................... **8**

   A.   FED. R. CIV. P. 12(B)(6) STANDARD ........................................................... 8

   B.   FED. R. CIV. P. 12(B)(1) STANDARD ........................................................... 9

**ARGUMENT** ........................................................................................................ **10**

   A.   THE OKORONKWOS' FDCPA VIOLATION CLAIM FAILS AS A MATTER OF LAW. ............... 10

   B.   PLAINTIFFS' CLAIM FOR VIOLATIONS OF GENERAL BUSINESS LAW § 349 SHOULD BE
       DISMISSED ................................................................................................ 15

   C.   THIS COURT SHOULD STAY THIS MATTER UNDER THE COLORADO RIVER DOCTRINE. ....... 19

**CONCLUSION** ..................................................................................................... **23**

# TABLE OF AUTHORITIES

## CASES

*Age Kola v. Forster & Garbus LLP*,
2021 U.S. Dist. LEXIS 172197 (S.D.N.Y. Sept. 10, 2021) ------------------------------------------- 14

*Amadei v. Nielsen*
348 F.Supp.3d 145 (E.D.N.Y. 2018) -------------------------------------------------------------- 9

*Anthony v. Fein, Such, & Crane, LLC*
2015 U.S. Dist. LEXIS 68700 (N.D.N.Y. 2015) ------------------------------------------------------ 11

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ------------------------------------------------------------------------------- 8

*Bell Atl. Corp. v. Twombly*
550 U.S. 544, 570 (2007) ------------------------------------------------------------------------- 8

*Bildstein v. MasterCard Int'l Inc.*
329 F.Supp.2d 410 (S.D.N.Y. 2004) --------------------------------------------------------------- 17

*Bmaddox Enters. LLC v. Oskouie*
2021 U.S. Dist. LEXIS 157010 (S.D.N.Y. Aug. 2021) ------------------------------------------------ 17

*Cal. Motor Transp. Co. v. Trucking Unlimited*
404 U.S. 508 (1972) ------------------------------------------------------------------------------- 18

*Casillas v. Madison Ave. Assocs.*
926 F.3d 329 (7th Cir. 2019) --------------------------------------------------------------------- 14

*Cassis v. Fannie Mae*, Case No. 21-cv-969, 2021 U.S. Dist. LEXIS 248357, at * 11 (E.D.N.Y.
Dec. 31, 2021) ------------------------------------------------------------------------------------ 20

*Chambers v. Time Warner, Inc.*
282 F.3d 147 (2d Cir. 2002) ----------------------------------------------------------------------- 9

*CIT Bank, N.A. v. Nwanganga*
328 F.Supp.3d 189 (S.D.N.Y. 2018) --------------------------------------------------------------- 12

*Colorado River Water Cons. Dist. v. United States*
424 U.S. 800 (1976) ------------------------------------------------------------------------------- 2

*Del Rio v. McCabe, Weisberg & Conway, LLC*
2021 U.S. Dist. LEXIS 222190 (S.D.N.Y. 2021) ------------------------------------------- 2, 11, 12

*DirecTV, Inc. v. Rowland*
2005 U.S. Dist. LEXIS 2454 (W.D.N.Y. Jan. 22, 2005)------------------------------------------18

*Dittmer v. Cnty. of Suffolk*
146 F.3d 113 (2d Cir. 1998) -----------------------------------------------------------------19

*Easterling v. Collector, Inc.*
692 F.3d 229 (2d Cir. 2012) -----------------------------------------------------------------10

*FDIC v. Four Star Holding Co.*
178 F.3d 97 (2d Cir. 1999)-------------------------------------------------------------------21

*Freedom Mtge. Corp. v Engel*
37 N.Y.3d 1 (2021) --------------------------------------------------------------------------11

*Garrison v. Caliber Home Loans, Inc.*
233 F.Supp.3d 1282 (M.D. Fla. 2017) -------------------------------------------------------11

*Green v. Specialized Loan Servicing LLC*
280 F.Supp.3d 1349 (M.D. Fla. 2017) -------------------------------------------------------12

*Hackett v. Midland Funding LLC*
2019 U.S. Dist. LEXIS 71898 (W.D.N.Y. 2019) ---------------------------------------------11

*Halberstam v. Glob. Credit & Collection Corp.*
2016 U.S. Dist. LEXIS 3567 (E.D.N.Y. Jan. 12, 2016) --------------------------------------10

*Hart v. FCI Lender Servs., Inc.*
797 F.3d 219 (2d Cir. 2015) -----------------------------------------------------------------10

*Hartford Life Ins. Co. v. Variable Annuity Life Ins. Co*.
964 F.Supp. 624 (D. Conn. 1997)-----------------------------------------------------------18

*Krondes v. Nationstar Mortg., LLC*
2018 U.S. Dist. LEXIS 98835 (S.D.N.Y. June 12, 2018) ------------------------------------2, 19

*Larsen v. JBC Legal Grp., P.C.*
533 F.Supp.2d 290 (E.D.N.Y. 2008) --------------------------------------------------------13

*Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.,* 19 F.4th 58, 64 (2d Cir. 2021) --------------------14

*Makarova v. United States*
201 F.3d 110 (2d Cir. 2000) -----------------------------------------------------------------10

*Mazuma Holding Corp. v. Bethke*
1 F.Supp.3d 6 (E.D.N.Y. 2014) -------------------------------------------------------------19

iv

*Odums v. Greenpoint Mortg. Funding, Inc.*
831 Fed.Appx. 32 (2d Cir. 2020) -------------------------------------------------------------------------- 9

*Papasan v. Allain*
478 U.S. 265 (1986) --------------------------------------------------------------------------------------- 9

*Parker v. Mandarich Law Grp.*
2021 U.S. Dist. LEXIS 108197 (E.D.N.Y. June 9, 2021) ----------------------------------------- 13

*Plummer v. Atl. Credit & Fin., Inc.*
66 F.Supp.3d 484 (S.D.N.Y. 2014) ------------------------------------------------------------------- 10

*Potente v. Capital One, N.A.*
2018 U.S. Dist. LEXIS 66109 (E.D.N.Y. 2018) ------------------------------------------------ 19, 20

*Prand Corp. v. Gardiner*
176 A.D.3d 1127 (2d Dept. 2019) --------------------------------------------------------------------- 20

*Roelcke v. Zip Aviation, LLC*
2021 U.S. Dist. LEXIS 226379 (S.D.N.Y. Nov. 23, 2021) -------------------------------------- 18

*Rosenberg v. McCarthy, Burgess & Wolff, Inc.*
2022 U.S. Dist. LEXIS 136289 (E.D.N.Y. Aug. 1, 2022) ---------------------------------------- 14

*Roy v. Bank of N.Y. Mellon*
2018 U.S. Dist. LEXIS 168799 (E.D.N.Y. Sept. 30, 2018) -------------------------------------- 21
*Singh v. NYCTL 2009-A Trust*
683 Fed.Appx. 76 (2d Cir. 2017) ------------------------------------------------------------------- 2, 18

*Sitgraves v. Fed. Home Loan Mortg. Corp.*
265 F.Supp.3d 411 (S.D.N.Y. 2017) ------------------------------------------------------------------ 20

*Solis v. Commonwealth Fin. Sys.*
2020 U.S. Dist. LEXIS 86792 (E.D.N.Y. May 15, 2020) ---------------------------------------- 13

*Spagnola v. Chubb Corp.*
574 F.3d 64 (2d Cir. 2009)----------------------------------------------------------------------------- 16

*Toohey v. Portfolio Recovery Assocs., LLC*
2016 U.S. Dist. LEXIS 111534 (S.D.N.Y. Aug. 22, 2016)-------------------------------------- 2, 17

*TransUnion, LLC v. Ramirez*
141 S. Ct. 2190 (2021) ----------------------------------------------------------------------------------- 13

*U.S. Bank Nat'l Ass'n v. East Fordham DE LLC*

804 Fed.Appx. 106 (2d Cir. 2020)------------------------------------------------------------------ 20, 21

*Wenegieme v. Bayview Loan Servicing*, Case No. 14-cv-9137, 2015 U.S. Dist. LEXIS 59950, at
  * 9 (S.D.N.Y. May 7, 2015). ------------------------------------------------------------------22

*Westmarc Communs. v. Conn. Dep't of Pub. Util. Control*
807 F.Supp. 876 (D. Conn. 1990)------------------------------------------------------------------21

*Wilmington PT Corp. v. Bank of N.Y. Mellon*
2019 U.S. Dist. LEXIS 145581 (E.D.N.Y. Aug. 27, 2019) -----------------------------------22

*Windward Bora, LLC v. Bank of N.Y. Mellon*,
2020 U.S. Dist. LEXIS 223692 (E.D.N.Y. Nov. 30, 2020) ---------------------------------22

*Wolkenfeld v. Portfolio Recovery Assocs.2*
022 U.S. Dist. LEXIS 69332 (E.D.N.Y. Apr. 14, 2022)------------------------------------14

## S<span>TATUTES</span>

15 U.S.C. § 1692 ------------------------------------------------------------------------------------ 1

15 U.S.C. §§ 1692e -------------------------------------------------------------------------------10

12 C.F.R. § 1026.41 ------------------------------------------------------------------------------17

New York General Business Law § 349 ----------------------------------------------------- 1

NY CPLR § 213------------------------------------------------------------------------------------20

R.P.A.P.L. § 1304------------------------------------------------------------------------------ passim

Defendant, SN Servicing Corporation ("SNSC"), by and through its attorneys, submits the following Memorandum of Law in Support of its Motion to Dismiss the Third Amended Complaint ("TAC") filed by Plaintiffs, Marie Baptiste-Elmine and Freddy Elmine (collectively, the "Elmines"), Ochieze Okoronkwo and Precilia Okoronkwo (collectively the "Okoronkwos"), Rose Prophete ("Prophete"), Dickson Regalado ("Regalado"), Javier Cruz ("Cruz"), Rebecca Perez ("Perez"), Alicia Lombardo ("Lombardo"), Tyrone Stewart ("Stewart"), Barthlomy and Eunice Ogbennaya (collectively, the "Ogbennayas") and Yvonne Jones ("Jones") (collectively "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## **INTRODUCTION**

Plaintiffs' TAC alleges two claims against SNSC: (1) violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA") (as alleged against SNSC by the Okoronkwos only); and (2) violations of the New York General Business Law § 349 (the "GBL Claim"). Plaintiffs premise their claims upon the allegations that SNSC attempted to collect monthly loan payments outside of the applicable statute of limitation, and allegations that SNSC's notices of default included amounts that are partially time barred. These claims fail and this Court should dismiss Plaintiffs' TAC for several reasons.

First, the TAC still fails to state cognizable causes of action[1] against SNSC. The Okoronkwos' FDCPA violation claim fails as a matter of law because: (1) the correspondence at issue are not false, deceptive, or misleading; (2) Okoronkwos' do not allege a violation of the FDCPA; (3) the Okoronkwos lack Article III standing; and (4) R.P.A.P.L. § 1304 required SNSC to include information concerning their loan, including the total amounts past due and days in default, in any pre-foreclosure notice. Thus, this Court should dismiss the Okoronkwos' alleged

---

[1] It does not appear in the TAC that Plaintiffs Cruz, Perez, Lombardo, the Ogbennayas, and Stewart join in any of the claims against, SNSC, but to the extent that this is unintended, their claims would fail for these same reasons.

FDCPA claim without leave to amend. *See e.g.*, *Del Rio v. McCabe, Weisberg & Conway, LLC*, Case No. 19-cv-10312, 2021 U.S. Dist. LEXIS 222190, at * 9-10 (S.D.N.Y. Nov. 16, 2021).

Plaintiffs' GBL Claim separately fails for several reasons. Initially, it was neither deceptive nor improper for SNSC to inform the Plaintiffs of the total amounts due on the loans because the applicable federal and state regulations required SNSC to do this. Similarly, the statute of limitation did not bar or preclude SNSC from complying with its regulatory obligations and informing the Plaintiffs of their account status. Further, contrary to Plaintiffs' claims, the six-year statute of limitation did not entirely bar an action on the loans. Plaintiffs' GBL Claim also fails because Plaintiffs did not suffer any actual loss supporting their GBL Claim, as required. *See e.g., Toohey v. Portfolio Recovery Assocs., LLC*, Case No. 15-cv-8098, 2016 U.S. Dist. LEXIS 111534, at * 30-31, fn. 17 (S.D.N.Y. Aug. 22, 2016).

This Court should separately dismiss Plaintiffs' GBL Claim because the *Noerr-Pennington* doctrine bars this claim. *See e.g.*, *Singh v. NYCTL 2009-A Trust*, 683 Fed.Appx. 76, 77-78 (2d Cir. 2017) ("[E]ach of [plaintiff's] claims is predicated on the defendants' alleged misrepresentations in demand letters, default letters, and settlement communications…[t]hese claims are barred under the *Noerr-Pennington* doctrine.").

Finally, this Court should dismiss or stay this litigation pending the outcome of the state foreclosure actions currently proceeding against Plaintiffs pursuant to the *Colorado River* doctrine. *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817 (1976); *see e.g.*, *Krondes v. Nationstar Mortg., LLC*, Case No. 17-cv-4974, 2018 U.S. Dist. LEXIS 98835, at * 8 (S.D.N.Y. June 12, 2018).

Accordingly, and as discussed more fully below, this Court should grant SNSC's Motion, dismiss Plaintiffs' TAC in its entirety, with prejudice, and enter judgment in favor of SNSC.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are derived from the allegations contained in Plaintiffs' TAC (Doc. 55), matters subject to judicial notice, and documents Plaintiffs referenced in the TAC.

### I.    The Okoronkwos' Allegations.

The Okoronkwos allege that in January 2006, they purchased real property located at 32-30 Mickle Avenue, Bronx, New York 10469 (the "Okoronkwo Property"). *See* TAC at ¶ 118, 120. To purchase the Okoronkwo Property, the Okoronkwos obtained a first priority loan in the amount of $340,000.00 (the "Okoronkwo First Loan") and a second priority loan of $85,000.00 (the "Okoronkwo Second Loan"), both from WMC Mortgage. *See* TAC at ¶ 126. A mortgage dated January 17, 2006 and recorded in the land records for Bronx County, New York secures the Okoronkwo Second Loan ("Okoronkwo Second Mortgage"). *See* Okoronkwo Second Mortgage, a copy of which is attached hereto as Exhibit 1. The Okoronkwo Second Loan matured on February 1, 2021. *Id.*

In 2011, the Okoronkwos allege that they modified the Okoronkwo First Loan and that they stopped receiving monthly statements for the Okoronkwo Second Loan. *See* TAC at ¶¶ 131-132. The Okoronkwos claim they did not receive a monthly statement on the Okoronkwo Second Loan for over a decade. *Id.* at ¶ 132. As a result, and after speaking with a housing counselor, the Okoronkwos claim they no longer owe anything on the Okoronkwo Second Loan. *Id.* at ¶133.

Okoronkwo further alleges that in November of 2020, SNSC sent Okoronkwo a notice (the "Okoronkwo Notice") stating that the Okoronkwo Second Loan was "4,030 days past due" and that over $103,000.00 was owed (the "Okoronkwo Notice"). *See* TAC at ¶ 135; Okoronkwo

Notice, a copy of which is attached hereto as Exhibit 2.[2] Okoronkwo claims the applicable statute of limitations bars most of the past due amount. *See* TAC at ¶ 136.

In the Spring of 2021, the alleged holder of the Okoronkwo Second Loan, NS194, LLC ("NS194"), filed a foreclosure action against the Okoronkwo Property captioned as *NS194 LLC v. Okoronkwo*, Case No. 804084/2021E in the Supreme Court for Bronx County, New York (the "Okoronkwo Foreclosure"). *See* TAC at ¶ 138; Docket for and Complaint filed in the Okoronkwo Foreclosure, a copy of which is attached hereto as Exhibit 3. The Okoronkwo Foreclosure remains open and pending. *See* Okoronkwo Foreclosure Docket (Ex. 3).

## II.     Prophete's Allegations.

Prophete alleges that in or around May 2005, she purchased real property located at 15 Paerdegat 6th Street, Brooklyn, New York 11236 (the "Prophete Property"). *See* TAC at ¶¶ 146-147.  To purchase the Prophete Property, Prophete obtained a first priority loan in the amount of $540,000.00 (the "Prophete First Loan") and a second priority loan of $63,000.00 (the "Prophete Second Loan"), both from Fairmont Funding Ltd. *Id*. at ¶ 151. A mortgage dated August 16, 2006 and recorded in the land records for Kings County, New York secures Prophete Second Loan ("Prophete Second Mortgage"). *See* Prophete Second Mortgage, a copy of which is attached hereto as Exhibit 4. The Prophete Second Loan matured September 1, 2021.  *See id*.

After obtaining the Prophete Second Loan, Prophete alleges that Bank of America, N.A. ("BANA"), the alleged holder of the Prophete Second Loan at that time, sent correspondence to Prophete stating she no longer had to make payments on the Prophete Second Loan. *See* TAC at ¶ 154. In October 2011, Prophete modified the Prophete First Loan. *Id.*  at ¶ 139. Prophete claims

---

[2] The Court may also consider documents which are referenced extensively in the SAC and relied upon by Plaintiffs for the claims alleged in the TAC. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

that she received no statement relating to the Prophete Second Loan after BANA allegedly informed her that she no longer had to make payments towards the Prophete Second Loan. *Id.*

In March 2021, the alleged holder of the Prophete Second Loan, NS194, filed a foreclosure action against the Prophete Property captioned as *NS194 LLC v. Prophete*, Case No. 502277/2021 (the "Prophete Foreclosure") filed in the Supreme Court for Kings County, New York. *See* TAC at ¶ 157, Docket for and Complaint filed in the Prophete Foreclosure, a copy of which is attached hereto as Exhibit 5. The Prophete Foreclosure remains open and pending. *See, Id*.

After the Prophete Foreclosure had been filed, Prophete claims she received a mortgage statement from SNSC allegedly seeking to collect amounts due under the Prophete Second Loan. *See* TAC at ¶¶ 164-166. Prophete claims that the applicable statute of limitation bars most of the amounts sought in the mortgage statement. *Id*.

## III. Regalado's Allegations.

Regalado alleges that in or around October 2006, he purchased real property located at 132-11 85th Street, Ozone Park, New York 11417 (the "Regalado Property"). See TAC at ¶¶ 168,170. To purchase the Regalado Property, Regalado obtained a first priority loan in the amount of $318,848.00 (the "Regalado First Loan") from America's Wholesale Lender and a second priority loan of $79,712.00 (the "Regalado Second Loan") from Countrywide Bank. *Id.* at ¶ 173. A mortgage dated October 18, 2006 and recorded in the land records for Queens County, New York secures the Regaldo Second Loan ("Regaldo Second Mortgage"). *See* Regaldo Second Mortgage, a copy of which is attached hereto as Exhibit 6. The Regaldo Second Loan matured on November 1, 2021. *See id*.

Regalado subsequently modified the Regalado First Loan and allegedly stopped receiving statements concerning the Regalado Second Loan. *See* TAC at ¶ 176. Because he allegedly

stopped receiving statements on the Regalado Second Loan, Regalado asserts he believed he no longer had to make any monthly payments on the Regalado Second Loan. *Id.* at ¶ 177.

Regalado claims that in 2019, he began receiving collection statements relating to the Regalado Second Loan. *See* TAC at ¶ 179. Regalado further alleges that in April of 2020, SNSC sent Regalado a notice stating that the Regalado Second Loan was "3,430 days past due" and that over $69,259.96 was owed (the "Regalado Notice"). *Id.* at ¶ 180. Regalado claims the applicable statute of limitations bars most the past due amount in the Regaldo Notice. *Id.* at ¶ 181.

In the fall of 2020, the alleged holder of the Regalado Second Loan, BCMB1 Trust ("BCMB1"), filed a foreclosure action against the Regalado Property captioned as *BCMB1 Trust v. Regalado*, Case No. 715320/2020 (the "Regalado Foreclosure") in the Supreme Court for Queens County, New York. *See* TAC at ¶ 183, Docket for and Complaint filed in the Regaldo Foreclosure, a copy of which is attached hereto as Exhibit 7. The Regalado Foreclosure was dismissed on June 16, 2022, due to the failure of BCMB1 to strictly comply with the pre-foreclosure notice requirements of R.P.A.P.L. § 1304. *See* Dismissal Order for Regalado Foreclosure, a copy of which is attached hereto as Exhibit 10.

Regalado claims that SNSC continued to send him monthly statements concerning the Regalado Second Loan, including an August 2021 statement, seeking years' worth of payments that could not legally be collected. *See* TAC at ¶ 191.

## IV.    **Jones' Allegations**.

Jones alleges that in or around February 2006, she purchased real property located at 346 Lott Avenue, Brooklyn, New York 11212 (the "Jones Property"). *See* TAC at ¶¶ 71, 73. To purchase the Jones Property, Jones obtained a first priority loan in the amount of $263,120.00 (the "Jones First Loan") from and a second priority loan of $65,780.00 (the "Jones Second Loan") both

from Fremont Investment and Loan. *See* TAC at ¶ 78. A mortgage dated February 17, 2006, and recorded in the land records for Kings County, New York secures the Jones Second Loan ("Jones Second Mortgage"). *See* Jones Second Mortgage, a copy of which is attached hereto as Exhibit 8. The Jones Second Loan has a maturity date of March 1, 2036. *See Id*. Jones subsequently modified the Jones First Loan and allegedly stopped receiving statements for the Jones Second Loan. *See* TAC at ¶ 81. Because she allegedly stopped receiving statements on the Jones Second Loan, Jones believes she no longer had to make any monthly payments on the Jones Second Loan. *Id.* at ¶¶ 81-82.

In the winter of 2021, Jones asserts that she began receiving statements from SNSC seeking payment on the Jones Second Loan. *See* TAC at ¶ 83. On or about January 28, 2021, the alleged holder of the Jones Second Loan, NS194, filed a foreclosure action against the Jones Property captioned as *NS194 v. Yvonne Prescott, et. al.*, Case No. 502303/2021 (the "Jones Foreclosure") in the Supreme Court for Kings County, New York. *See* TAC at ¶ 84, Docket for and Complaint filed in the Jones Foreclosure, a copy of which is attached hereto as Exhibit 9. The Jones Foreclosure was dismissed on November 29, 2022 due to concerns over whether NS 194 strictly comply with the pre-foreclosure notice requirements of R.P.A.P.L. § 1304. *See* Dismissal Order for Jones Foreclosure, a copy of which is attached hereto as Exhibit 11.

## V.    The Elmines' Allegations.

The Elmines allege that in or around September 2006 and January 2007, they refinanced their prior home loan, which is secured by real property located at 119-12 220th Street, Cambria Heights, New York 11411 (the "Elmine Property"). *See* TAC at ¶ 46, 48, 50. To refinance, the Elmines obtained a first priority loan in the amount of $433,000.00 (the "Elmine First Loan") and a second priority loan of $37,450.00 (the "Elmine Second Loan"), both from Countrywide Home

Loans ("Countrywide"). *See* TAC at ¶ 54. A mortgage dated January 17, 2007 and recorded in the land records for Queens County, New York the Elmine Second Loan ("Elmine Second Mortgage"). *See* Elmine Second Mortgage, a copy of which is attached hereto as Exhibit 12. The Elmine Second Loan matured on February 1, 2022. *Id.*

The Elmines allege that they fell behind on their loan payments in 2008, thereafter modified the Elmine First Loan, and then stopped receiving statements for the Elmine Second Loan. *See* TAC at ¶¶ 56-58. The Elmines claim they did not receive a monthly statement relating to the Elmine Second Loan for years, leading them to believe that Elmine First Loan modification consolidated the Elmine First and Second Loans into a single loan. *Id.* at ¶ 58-59.

The Elmines assert that they began receiving statements from SNSC seeking payment on the Elmine Second Loan. *See* TAC at ¶ 62. On or about September 28, 2020, the alleged holder of the Elmine Second Loan, BCMB1 Trust, filed a foreclosure action against the Elmine Property captioned as *BCMB1 v. Freddy Elmine, et. al.*, Case No. 717009/2020 (the "Elmine Foreclosure") in the Supreme Court for Queens County, New York. *See* TAC at ¶ 63, Docket for and Complaint filed in the Elmine Foreclosure, a copy of which is attached hereto as Exhibit 13.

The Elmine Foreclosure was voluntarily discontinued without prejudice on February 2, 2023. *See* Voluntary Discontinue Order for Elmine Foreclosure, a copy of which is attached hereto as Exhibit 14.

### STANDARD OF REVIEW

A.    **Fed. R. Civ. P. 12(b)(6) Standard.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, for a

claim to have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*citing Twombly*, 550 U.S. at 556).

Although a court must accept as true all the factual allegations contained in a complaint, this tenet "is inapplicable to legal conclusions." *Id*. Importantly, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Furthermore, a plaintiff cannot "unlock the doors of discovery" if he is "armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" *Id*. at 679 (*citing* Fed. R. Civ. P. 8).

"A complaint is 'deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Odums v. Greenpoint Mortg. Funding, Inc*., 831 Fed.Appx. 32, 33 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc*., 282 F.3d 147, 152 (2d Cir. 2002)). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers*, 282 F.3d at 153.

**B.      Fed. R. Civ. P. 12(b)(1) Standard.**

"Pre-answer motions to dismiss for lack of standing are governed by Federal Rule of Civil Procedure 12(b)(1)." *Amadei v. Nielsen*, 348 F.Supp.3d 145, 154 (E.D.N.Y. 2018). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court…may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110,

113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

## ARGUMENT

**A.     The Okoronkwos' FDCPA Violation Claim Fails as a Matter of Law**.

In support of their FDCPA violation, the Okoronkwos assert that SNSC violated 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(5) by sending the Okoronkwo Notice because it allegedly attempted to collect amounts that were not due or were not collectable under the applicable six year statute of limitation. *See* TAC at ¶¶ 260, 262.

To state a claim under the FDCPA, a plaintiff must allege: (1) he or she is a "consumer" who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt; (2) the defendant collecting the debt is considered a "debt collector"; and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements. *Plummer v. Atl. Credit & Fin., Inc.*, 66 F.Supp.3d 484, 488 (S.D.N.Y. 2014).

The Second Circuit applies an objective standard in evaluating whether a communication was sent for debt collection. *See, e.g., Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 225 (2d Cir. 2015); *accord*, *Halberstam v. Glob. Credit & Collection Corp.*, 2016 U.S. Dist. LEXIS 3567, at * 9 (E.D.N.Y. Jan. 12, 2016) (relying on *Hart* and analyzing the "in connection with" element from the perspective of an "objective debtor"); *Easterling v. Collector, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012) ("Whether a collection letter is false, deceptive, or misleading under the FDCPA is determined from the perspective of the objective least sophisticated consumer.").

"To state an FDCPA claim against a debt collector for filing a collection case, a plaintiff must plausibly allege that the debt collector filed its collection case without a good faith belief in its validity." *Hackett v. Midland Funding LLC*, 2019 U.S. Dist. LEXIS 71898, at * 7 (W.D.N.Y.

2019) (quotations omitted). The "good faith and knowingly" standard applies to threatened litigation as well. *See e.g.*, *Anthony v. Fein, Such, & Crane, LLC*, 2015 U.S. Dist. LEXIS 68700, at * 10 (N.D.N.Y. 2015) ("Threatening to…[file] a lawsuit which a debt collector *knows or should have known* is time-barred have been found to be actionable under the FDCPA.") (emphasis added).

When a debt collector has a good faith argument that the applicable statute of limitation does not bar a debt, then a debtor's FDCPA claim cannot be maintained. *See e.g., Garrison v. Caliber Home Loans, Inc.,* 233 F.Supp.3d 1282, 1294 (M.D. Fla. 2017) (A potential statute of limitations affirmative defense "does not provide a plausible basis for [p]laintiff's [FDCPA] claims…[i]nstead the SOL Issue should be raised—if at all—as an affirmative defense to an actual collection or foreclosure action.").

The statute of limitation in New York for a mortgage foreclosure action is six years. *See,* NY CPLR § 213(4). "[A] cause of action to recover the entire balance of the debt accrues at the time the loan is accelerated, triggering the six-year statute of limitations to commence a foreclosure action." *Del Rio v. McCabe, Weisberg & Conway, LLC*, 2021 U.S. Dist. LEXIS 222190, at * 6 (S.D.N.Y. 2021). "[A]n election to accelerate must be made by an 'unequivocal overt act' that discloses the noteholder's choice, such as the filing of a verified complaint seeking foreclosure and containing a sworn statement that the noteholder is demanding repayment of the entire outstanding debt." *Freedom Mtge. Corp. v Engel*, 37 N.Y.3d 1, 22 (2021).

Here, the Okoronkwos Second Loan was accelerated either on: (1) February 1, 2021, the Okoronkwos Second Loan's maturity date; or (2) March 24, 2021, the day the Okoronkwo Foreclosure was filed. *See* Okoronkwos Second Mortgage (Ex. 1); Okoronkwo Foreclosure Complaint (Ex. 3). Thus, the statute of limitation to recover the Okoronkwos Second Loan's

outstanding balance does not run until February 1, 2026, at the earliest.  Consequently, the crux of the FDPCA claim – that the Okoronkwos Second Loan is time-barred – fails at the outset for the third time in this litigation.

To the extent the Okoronkwos may claim that some of the monthly loan payments may be time barred, this argument does not save their FDCPA claim because the Okoronkwo Foreclosure will determine the exact amount owed.  *See e.g.*, *CIT Bank, N.A. v. Nwanganga*, 328 F.Supp.3d 189, 199 (S.D.N.Y. 2018) ("[R]ather a dispute about the exact amount owed by a mortgagor to a mortgagee does not preclude summary judgment directing a foreclosure sale."); *Green v. Specialized Loan Servicing LLC*, 280 F.Supp.3d 1349, 1352-1353 (M.D. Fla. 2017) (Plaintiff's "claims fail as a matter of  law because the Fla. SOL is a matter to be raised as a defense in a foreclosure case—not as an affirmative claim under an FDCPA claim related to a mortgage.")

Because the Okoronkwo Foreclosure is not time barred, SNSC sending the Okoronkwo Notice was not "false, deceptive, or misleading" as a matter of law.  For this reason alone, this Court should dismiss the Okoronkwos' FDCPA claim with prejudice.  *See e.g.*, *Del Rio v. McCabe, Weisberg & Conway, LLC*, 2021 U.S. Dist. LEXIS 222190, at * 9-10 (S.D.N.Y. 2021) (Dismissing an FDCPA claim based on a notice of default because defendants were not being "false, deceptive, or misleading simply based on the fact that they failed to remind Plaintiffs that they may have a statute of limitations defense.").

Additionally, New York law required SNSC to include information concerning their loan, including the total amounts past due and days in default, in any pre-foreclosure notice information to the Okoronkwos.  *See* R.P.A.P.L. § 1304(1).  Thus, the Okoronkwo Notice should not be considered an attempt to collect "on a time barred debt." Instead, SNSC sent the Okoronkwo Notice for informational purposes to provide the Okoronkwos with the requisite information

required by law.  For this reason as well, the alleged FDCPA claim fails.

Moreover, the Okoronkwos fail to explicitly allege that the amount claimed in the Okoronkwo Notice is actually false.  Rather, they solely allege that the statute of limitation bars collection on portions of the Okoronkwos Second Loan's outstanding balance. *See* TAC at ¶ 238. However, simply seeking to collect voluntary payments on a time-barred debt does not violate the FDCPA, as the Okoronkwos contend.  *See e.g., Larsen v. JBC Legal Grp., P.C.*, 533 F.Supp.2d 290, 302-03 (E.D.N.Y. 2008); *Parker v. Mandarich Law Grp*., Case No. 19-CV-6313, 2021 U.S. Dist. LEXIS 108197, at * 42 (E.D.N.Y. June 9, 2021). For this reason also, the Okoronkwos' claim that SNSC violated the FDCPA fails as a matter of law and should be dismissed without leave to amend.  *See e.g.*, *Solis v. Commonwealth Fin. Sys*., Case No. 18-cv-6130, 2020 U.S. Dist. LEXIS 86792, at * 14 (E.D.N.Y. May 15, 2020) ("Generally, a creditor can seek voluntary payment of a time-barred debt.") (quotations omitted).

Finally, the Okoronkwos lack standing under Article III to proceed with their FDCPA claim because the damages alleged are completely unrelated to the purported pre-foreclosure notice received from SNSC, and because the Okoronkwos do not allege any intent to pay the amounts demanded in the Okoronkwo Notice. *See TransUnion, LLC v. Ramirez,* 141 S. Ct. 2190 (2021). Instead, the Okoronkwos' alleged damages are either relate to their actual default on their loan (e.g. credit-injury), which is not in dispute, or their supposed damages arising from the foreclosure complaint, which SNSC is not a party to.

For example, the Okornkwos' allege they incurred costs to meet with legal counsel, including parking and copy fees, "to assess their legal defenses and prepare an answer to the foreclosure complaint." *See* TAC at ¶¶ 260.  Most importantly, the Okornkwos do not allege they made any payments towards Okoronkwo Second Loan at any point after the Okoronkwo Notice.

As the Supreme Court definitively stated, "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id.* at 2205 (quoting *Casillas v. Madison Ave. Assocs.*, 926 F.3d 329, 332 (7th Cir. 2019)). Further, "if the plaintiff does not claim to have suffered an injury that the defendant has caused *and the court can remedy*, there is no case or controversy for the federal court to resolve." *Id.* (emphasis added) (quoting *Casillas*, 926 F.2d at 333).

The Second Circuit emphasized this conclusion from *Ramirez* in its reconsideration opinion in *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.,* 19 F.4th 58, 64 (2d Cir. 2021). There, the Second Circuit rejected its prior holding of standing arising under a substantive right granted by statute, and explained that following the holding in *Ramirez*, "plaintiffs must show that the statutory violation caused them a concrete harm, regardless of whether the statutory rights violated were substantive or procedural." *Maddox*, 19 F.4th at 64-65.

The purported inclusion of the alleged time-barred debt amounts in the Okoronkwo Notice would – at most - simply result in an informational injury, and not the necessary pecuniary loss required to confer Article III standing. *See e.g.*, *Age Kola v. Forster & Garbus LLP*, Case No. 19-cv-10496, 2021 U.S. Dist. LEXIS 172197, at * 21 (S.D.N.Y. Sept. 10, 2021) ("Plaintiff's failure to establish a concrete harm sufficient to establish standing deprives this Court of subject matter jurisdiction over her claims."); *Rosenberg v. McCarthy, Burgess & Wolff, Inc.,* Case No. 21-cv-2199, 2022 U.S. Dist. LEXIS 136289, *14 (E.D.N.Y. Aug. 1, 2022); *Wolkenfeld v. Portfolio Recovery Assocs.,* Case No. 22-cv-1156, 2022 U.S. Dist. LEXIS 69332, *7-8 (E.D.N.Y. Apr. 14, 2022).

In *Rosenberg*, this court considered and rejected similar claims by that plaintiff that the defendant violated the FDCPA by seeking "to collect an amount that misrepresents the debt"

through the inclusion of various fines and expenses that were inappropriately added to the debt. 2022 U.S. Dist. LEXIS 136289, *3-4. Similar to the Okoronkwos, the plaintiff in *Rosenberg* did not allege that they had sent or intended to send any payments on the allegedly misrepresented debt. *Id.*, at *14. The court in *Rosenberg* concluded that these claims were insufficient because it only presented "a risk of future harm, which is insufficient to confer standing in a suit for damages under [*Ramirez*]." *Id.* (citing *Ramirez,* U.S. 141 S.Ct. at 2210)).

This court also rejected claims under the FDCPA for purportedly misrepresented debts in collection letters in *Wolkenfeld.* There, the plaintiff alleged that he was "confused and misled" by the purportedly inaccurate correspondence. 2022 U.S. Dist. LEXIS 69332, *5-8. The court determined that the plaintiff failed to allege standing under Article III and that dismissal was appropriate because plaintiff "must plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief." *Id.*, at *8 (quoting *Maddox*, 19 F.4th at 65-66).

This Court must follow the precedent established in *Ramirez* and *Maddox*, and just like this court's rulings in *Rosenberg* and *Wolkenfeld,* determine that the Okoronkwos lack Article III standing to bring their claims under the FDCPA in this Court.

Accordingly, this Court should grant SNSC's Motion and dismiss the Okoronkwos' FDCPA claim with prejudice and without leave to amend.

**B.      Plaintiffs' Claim for Violations of General Business Law § 349 Should Be Dismissed.**

In support of their GBL Claim, Plaintiffs allege SNSC engaged in following deceptive and misleading acts: (1) pursuing collection that came due more than six years before the commencement of collection efforts in violation of New York law; (2) sending pre-foreclosure notices demanding payment on time-barred debt; and (3) abusing New York's statutory borrower

protections in an attempt to coerce Plaintiffs into paying amounts that they did not owe and that SNSC could not enforce. *See* TAC at ¶¶ 247-248.

To state a claim under the Section 349 of the New York General Business Law, "a plaintiff must allege that: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).

Initially, Plaintiffs' GBL Claim fails because the loans at issue are not time-barred. As noted above, the applicable statute of limitation period for mortgage loans does not begin to run on the entire loan balance ***until after acceleration***. *See e.g., Del Rio*, 2021 U.S. Dist. LEXIS 222190, at * 6. And just as with the Okoronkwos Second Loan, there are no allegations that the other Plaintiffs' loans were accelerated at any time before the filing of the respective foreclosure actions. *See generally,* TAC; *see also,* Foreclosure Dockets and Complaints (**Exs. 3, 5, 7, 9**). Thus, contrary to the claims by the Plaintiffs, the loans at issue were not, in fact, time barred.

Moreover, Plaintiffs do not actually allege that each respective loan's outstanding balance is not accurately reflected in the correspondence at issue. *See generally,* TAC. Indeed, all the Plaintiffs admit that they stopped making payments on their respective loans. *See* TAC, ¶¶ 81-82, 133, 155, 177.

Additionally, New York and federal law required SNSC to inform the Plaintiffs of the amounts due and owing on their respective loans. *See* R.P.A.P.L. § 1304(1) (pre-foreclosure notices); 12 C.F.R. § 1026.41(d)(1), (8) (monthly periodic statements). Indeed, under the applicable requirements under Section 1026.41 of Regulation X, SNSC was required to provide periodic statements to the Plaintiffs informing them of the "length of the consumer's delinquency"

and the "total payment amount needed to bring the account current." *See* 12 C.F.R. § 1026.41(d)(8)(i), (vi).

The information required by Regulation X and the New York law is the exact information that Plaintiffs claim was improper for SNSC to provide to them in the statements at issue. *See* TAC, ¶¶ 83, 135-137, 165, 180. Despite this, Plaintiffs complain that it is somehow improper for SNSC to provide them with this legally required information which they do not otherwise claim to be inaccurate. This is not and cannot be the law. It cannot be either a deceptive or improper practice for SNSC to inform the Plaintiffs of the total amounts due on the loans or the length of their defaults when both federal and state law mandate that SNSC provide this information to the Plaintiffs.

Plaintiffs' GBL Claim separately fails because Plaintiffs did not suffer any actual loss, nor do they allege they paid the alleged time barred monthly payments. As such, Plaintiffs cannot allege any harm supporting their GBL Claim.

Similar to the Article III issue with the FDCPA claim, the Plaintiffs were not actually injured here other than receiving a statement or default notice, which supposedly included time-barred amounts. The mere receipt of deceptive information cannot itself be the only injury. *See Bildstein v. MasterCard Int'l Inc.,* 329 F.Supp.2d 410 (S.D.N.Y. 2004); *Bmaddox Enters. LLC v. Oskouie,* Case No. 17-cv-1889, 2021 U.S. Dist. LEXIS 157010, *46-47 (S.D.N.Y. Aug. 2021) (conclusory claims of reputational damages without support are insufficient for claims); *Age Kola,* 2021 U.S. Dist. LEXIS 172197 at * 21; *Rosenberg,* 2022 U.S. Dist. LEXIS 136289, at *14; *Wolkenfeld,* 2022 U.S. Dist. LEXIS 69332, at *7-8. This Court should dismiss Plaintiffs' GBL Claim for this reason also. *See e.g.*, *Toohey v. Portfolio Recovery Assocs., LLC*, Case No. 15-cv-8098, 2016 U.S. Dist. LEXIS 111534, at * 30-31 fn 17 (S.D.N.Y. Aug. 22, 2016) ("The GBL §

349 'actual injury' element requires something more than the 'injury-in-fact' required to establish constitutional standing.").

The *Noerr-Pennington* doctrine, which "generally immunizes from liability a party's commencement of a prior court proceeding" separately bars Plaintiffs' GBL claim. *Roelcke v. Zip Aviation, LLC*, Case No. 15-cv-6284, 2021 U.S. Dist. LEXIS 226379, at * 34 (S.D.N.Y. Nov. 23, 2021) (quotations omitted); *see also, Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 509-10 (1972). While the doctrine traditionally "arose in the context of petitions for anti-competitive legislation, the *Noerr-Pennington* doctrine encompasses all petitioning activity, including concerted actions before courts and administrative agencies and concerted efforts incident to litigation, such as pre-litigation threat letters and settlement offers." *Singh v. NYCTL 2009-A Trust*, 683 Fed.Appx. 76, 77 (2d Cir. 2017) (quotations omitted). Although "litigation-related communications are not literally petitions to the government, they are a preliminary step to resort to litigation if necessary and therefore fall within the protection of the *Noerr-Pennington* doctrine." *Id.*

Importantly, the Second Circuit has applied the *Noerr-Pennington* doctrine to claims brought under Section 349 of the GBL arising from a notice of default letter sent in connection with a good faith foreclosure action. *See e.g.*, *Singh*, 683 Fed.Appx. at 77-78; *see also*, *DirecTV, Inc. v. Rowland*, Case No. 04-cv-297S, 2005 U.S. Dist. LEXIS 2454, at * 9 (W.D.N.Y. Jan. 22, 2005) (Applying *Noerr-Pennington* to a GBL claim).

While there is a "sham activities" exception to the *Noerr-Pennington* doctrine, it does not apply here because there was a good faith basis for the investors to file the foreclosure actions (i.e., the loans are not in fact, time-barre), as discussed above. *See, Hartford Life Ins. Co. v. Variable Annuity Life Ins. Co.*, 964 F.Supp. 624, 626-627 (D. Conn. 1997) ("Under the sham exception,

litigation may be deprived of immunity if it constitutes a mere sham to cover...an attempt to interfere directly with the business relationships of a competitor.").

Accordingly, this Court should grant SNSC's Motion and dismiss Plaintiffs' GBL claim with prejudice and without leave to amend.

## C.    This Court Should Stay this Matter under the Colorado River Doctrine.

Initially, this Court should stay this litigation pursuant to the *Colorado River* doctrine because the pending foreclosure actions filed against Plaintiffs by the respective loan owners for their loans will determine the state law issue of whether the applicable six-year statute of limitation bars an action to foreclose the respective loans. SNSC notes that the Elmine, Regaldo, and Jones Foreclosures have been dismissed for purposes of the Colorado River Doctrine.

"Under the Colorado River abstention doctrine, a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources." *Krondes v. Nationstar Mortg., LLC*, 789 Fed.Appx. 913, 913 (2d Cir. 2020) (quotations omitted).

"Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) (quotations omitted). "Perfect symmetry of parties and issues is not required." *Potente v. Capital One, N.A.,* 2018 U.S. Dist. LEXIS 66109, at * 10 (E.D.N.Y. 2018). "Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Mazuma Holding Corp. v. Bethke*, 1 F.Supp.3d 6, 20 (E.D.N.Y. 2014).

Here, the foreclosure actions filed against Plaintiffs are parallel to this litigation as the parties in the foreclosure actions have aligned interests with the parties in this action. Although

SNSC is not a named party in the foreclosure actions, the foreclosure actions' named plaintiffs, the entities entitled to enforce the loans, and SNSC shares a congruent interest in determining whether the applicable statute of limitation bars an action to foreclose the loans. Thus, the parties in this action and the foreclosure actions are substantially same for *Colorado River* purposes. *See e.g.*, *Sitgraves v. Fed. Home Loan Mortg. Corp.*, 265 F.Supp.3d 411, 413 (S.D.N.Y. 2017); *Potente v. Capital One, N.A.*, Case No. 16-cv-3570, 2018 U.S. Dist. LEXIS 66109, at * 10 (E.D.N.Y. Apr. 19, 2018) ("Abstention may be appropriate notwithstanding the nonidentity of the parties in cases where interests are congruent.")

Moreover, the claims alleged in the TAC are premised upon the (erroneous) assertion that collection and enforcement of the loans and mortgages are wrongful because the applicable statute of limitation bars any such action. Consequently, the foreclosure actions and this litigation must consider and resolve similar legal issues including whether: (1) NY CPLR § 213(4) bars collection on the loan; (2) the foreclosure actions' named plaintiffs can foreclose on the properties; and (3) Plaintiffs' loans are enforceable. *See e.g.*, *Prand Corp. v. Gardiner*, 176 A.D.3d 1127, 1129 (2d Dept. 2019) (The bar of statute of limitations "is an affirmative defense [under New York law], which may be waived if not asserted in a responsive pleading…).

Simply put, if the foreclosure actions determine that the loans are enforceable and not time barred, then Plaintiffs' TAC will necessarily fail in its entirety. *See e.g.*, *Cassis v. Fannie Mae*, Case No. 21-cv-969, 2021 U.S. Dist. LEXIS 248357, at * 11 (E.D.N.Y. Dec. 31, 2021) ("The pending State Court foreclosure action is a parallel proceeding to this action because…both actions concern the enforceability of the Note and Mortgage."); *U.S. Bank Nat'l Ass'n v. East Fordham DE LLC*, 804 Fed.Appx. 106, 107 (2d Cir. 2020).

Next, the *Colorado River* factors weigh in favor of abstention. If the actions are deemed parallel, courts should consider the following six factors in determining whether abstention is appropriate:

> (1) [T]he assumption of jurisdiction by either court over any *res* or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. *U.S. Bank Nat'l Ass'n v. East Fordham DE LLC*, 804 Fed.Appx. 106, 107 (2d Cir. 2020).

First, the state court has jurisdiction over the *res,* the properties, as a "foreclosure [proceeding] is an in rem proceeding." *FDIC v. Four Star Holding Co.*, 178 F.3d 97, 102 (2d Cir. 1999). Indeed, case law is clear that when "the state court proceeding is a foreclosure action, this factor strongly favors abstention." *Roy v. Bank of N.Y. Mellon*, Case No. 17-cv-6729, 2018 U.S. Dist. LEXIS 168799, at * 14 (E.D.N.Y. Sept. 30, 2018) (quotations omitted). Thus, this factor indisputably favors abstention. *See e.g.*, *Krondes*, 2018 U.S. Dist. LEXIS 98835, at * 8.

Second, staying or dismissing this litigation would avoid piecemeal litigation. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Westmarc Communs. v. Conn. Dep't of Pub. Util. Control*, 807 F.Supp. 876, 882, fn. 17 (D. Conn. 1990) (quotations omitted). Because the foreclosure actions will likely decide the issues underlying Plaintiffs' claims (i.e. whether the enforcement of the loans and mortgages are time-barred), it is a better use of judicial resources to stay this litigation to avoid risking inconsistent results. *See e.g.*, *Sitgraves,* 265 F.Supp.3d at 414 ("Avoidance of piecemeal litigation weighs in favor of abstention where a party's claims in the federal action can and should be handled as a defense to the foreclosure claim.").

As to the fourth *Colorado River* factor, the order that jurisdiction was obtained also favors abstention because the foreclosure actions were filed first and have progressed further than this litigation. *See* Foreclosure Complaints and Dockets (Exs. 3, 5, 7, 9); *see also*, *Wilmington PT Corp. v. Bank of N.Y. Mellon*, Case No. 19-cv-02816, 2019 U.S. Dist. LEXIS 145581, at * 9 (E.D.N.Y. Aug. 27, 2019).

The fifth factor also favors applying the *Colorado River* doctrine here because state law governs the key issue: whether the six-year statute of limitation bars an action on the loans. Nor does the presence of Plaintiff's FDCPA claim compel a different result as this proceeding is essentially the same as the foreclosure actions. *See*, *Krondes*, 2018 U.S. Dist. LEXIS at * 11 ("Although [plaintiff] asserts five federal causes of action, each relies on the same underlying facts: whether his mortgage is valid and whether the [d]efendants may foreclose on his property, matters of state law."). Thus, the state court is better suited to resolve the issues presented by the SAC. *See e.g.*, *Windward Bora, LLC v. Bank of N.Y. Mellon*, Case No. 19-cv-858, 2020 U.S. Dist. LEXIS 223692, at * 17 (E.D.N.Y. Nov. 30, 2020) ("[T]here can be no doubt that New York State courts have far more experience interpreting and applying its provisions, making them particularly well suited to decide the issues presented by this case.").

Finally, there is little dispute that the courts' overseeing the foreclosure actions can adequately protect Plaintiffs' "federal rights" as Plaintiffs' arguments that the loans are time barred, can – and must - be raised as defenses in the foreclosure actions. Indeed, there is nothing indicating that the court in the foreclosure actions will not protect Plaintiffs' substantive and procedural rights. *See e.g.*, *Wenegieme v. Bayview Loan Servicing*, Case No. 14-cv-9137, 2015 U.S. Dist. LEXIS 59950, at * 9 (S.D.N.Y. May 7, 2015).

Accordingly, for all these reasons, this Court should dismiss or stay Plaintiffs' SAC pursuant to the *Colorado River* doctrine.

## <u>CONCLUSION</u>

For the reasons discussed above, Plaintiffs' TAC should be dismissed in its entirety, with prejudice. This Court previously gave Plaintiffs an opportunity to amend their alleged claims, but they still cannot state a claim. Thus, this Court should dismiss the TAC without leave to amend because it would be futile to give Plaintiffs additional leave to allege a Fourth Amended Complaint.

Dated: April 5, 2024

Respectfully Submitted,

MAURICE WUTSCHER, LLP

*Attorneys for Defendants,*
*SN Servicing Corporation*

By: **<u>/s/ Thomas R. Dominczyk</u>**
Thomas R. Dominczyk
5 Walter E. Foran Blvd.
Suite 2007
Flemington, NJ 08822
(908) 237-4550
tdominczyk@mauricewutscher.com