UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
MARIE BAPTISTE-ELMINE, FREDDY
ELMINE, YVONNE JONES, OCHIEZE
OKORONKWO, PRECILIA
OKORONKWO, ROSE PROPHETE,
DICKSON REGALADO, JAVIER CRUZ,
TYRONE STEWART, REBECCA PEREZ,
ALICIA LOMBARDO, BARTHLOMY
OGBENNAYA, and EUNICE
OGBENNAYA,

                  Plaintiffs,

      v.

RICHLAND & FALKOWSKI, PLLC
and SN SERVICING CORPORATION,

               Defendants.
------------------------------------------------------x

**MEMORANDUM AND ORDER**
21-CV-4994 (RPK) (PK)

RACHEL P. KOVNER, United States District Judge:

Thirteen plaintiffs bring this action against Richland & Falkowski, PLLC ("R&F") and SN

Servicing Corporation ("SNSC") in connection with defendants' attempts to collect debt on which

the applicable statute of limitations had expired. All plaintiffs assert that R&F violated multiple

provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*,

specifically Sections 1692e and 1692f; Ochieze and Precilia Okoronkwo assert that SNSC also

violated Section 1692e of the FDCPA; and the Okoronkwos, Marie Baptiste-Elmine, Freddy

Elmine, Yvonne Jones, Rose Prophete, and Dickson Regalado assert that SNSC violated the

Deceptive Practices Act, New York General Business Law ("GBL") § 349. Each defendant moves

to dismiss the claims against them for lack of standing and for failure to state a claim, and SNSC

moves to stay the case under the abstention doctrine rooted in *Colorado River Water Conservation

District v. United States*, 424 U.S. 800 (1976). Defendants' motions are denied.

# BACKGROUND

## I.    Factual Background

The following facts are drawn from the operative complaint and from state-court filings incorporated by reference in that complaint. They are assumed true for the purposes of this order.

Plaintiffs are New York homeowners against whom R&F filed state-court foreclosure actions on behalf of various clients based on junior-lien mortgages for which some payments were due more than six years prior, *see* Third Am. Compl. ¶¶ 2, 4–5, 20 (Dkt. #55), even though New York's statute of limitations for mortgage foreclosure actions is six years and "begins to run[] on the date each [mortgage] installment becomes due," *53rd St., LLC v. U.S. Bank Nat'l Ass'n*, 8 F.4th 74, 78 (2d Cir. 2021) (citation omitted); *see* N.Y. C.P.L.R. § 213(4). SNSC "serviced the mortgage debt" of Marie Baptiste-Elmine and Freddy Elmine, Yvonne Jones, Ochieze and Precilia Okoronkwo, Rose Prophete, and Dickson Regalado. *See* Third Am. Compl. ¶ 21. Plaintiffs Javier Cruz and Rebecca Perez live together, as do the Elmines, the Okoronkwos, and Barthlomy and Eunice Ogbennaya. *Id.* ¶¶ 22, 46, 118, 217.

Plaintiffs' junior-lien mortgages were originated between 2006 and 2007 with interest rates ranging from 8.25% to 11.5%. *See id.* ¶¶ 31–34, 54–55, 73, 77–79, 99–101, 120, 126–27, 147–49, 151–52, 170, 173–74, 198–200, 219, 222, 225. For periods of time prior to the filing of foreclosure proceedings, ranging from about six years to over a decade, plaintiffs did not receive monthly statements for those mortgages. *See id.* ¶¶ 35–37, 58, 60–63, 81–84, 106–09, 132, 134–38, 154–57, 176–80, 204, 206–08, 231–34. Plaintiffs claim they believed their homes were no longer subject to the junior-lien mortgages because they were not receiving mortgage statements and because each plaintiff either was unaware the mortgage existed or thought the mortgage had been cancelled as part of a modification of his or her first-lien mortgage. *See id.* ¶¶ 3, 32–33, 59, 81, 103–05, 133, 154–55, 176–77, 202–05, 230–32. Certain plaintiffs received professional advice

that they no longer were required to make payments on their junior-lien mortgages. *See id.* ¶¶ 133, 154, 223, 232.

Between 2020 and 2021, plaintiffs received the summonses and complaints commencing foreclosure actions based on their respective junior-lien mortgages. *Id.* ¶¶ 37, 63, 84, 109, 138, 157, 183, 208, 234. Each foreclosure complaint "demand[ed] judgment adjudging and decreeing the amounts due" for "principal" and "interest" and attached a schedule specifying a total "principal balance due" and "the date and rate from which interest accrued and is owing." Cruz Compl. 5–6, 50 (Dkt. #27-4) (ECF Pagination); *see* Baptiste-Elmine Compl. 3–4, 34 (Dkt. #27-8) (ECF Pagination); Jones Compl. 5–6, 39 (Dkt. #27-11) (ECF Pagination); Lombardo Compl. 5–6, 47 (Dkt. #27-13) (ECF Pagination); Okoronkwo Compl. 5–6, 30 (Dkt. #27-16) (ECF Pagination); Prophete Compl. 5–6, 26 (Dkt. #27-20) (ECF Pagination); Regalado Compl. 3–4, 27 (Dkt. #27-23) (ECF Pagination); Stewart Compl. 5–6, 33 (Dkt. #27-26) (ECF Pagination); Ogbennaya Compl. 5–6, 30 (Dkt. #33-5) (ECF Pagination).

Plaintiffs allege that the total principal and interest sought by those foreclosure filings included the following amounts related to mortgage payments on which the statute of limitations had expired: for Cruz and Perez, over $10,000 in interest and about $1,300 of the $21,779.47 principal sought in the foreclosure complaint; for the Elmines, over $14,500 in interest and about $1,500 of the $35,623.89 principal sought; for Jones, over $59,000 in interest and about $2,800 of the $65,694.67 principal; for Alicia Lombardo, over $7,500 in interest and about $3,300 of the $19,647.03 principal sought; for the Okoronkwos, over $42,000 in interest and about $2,700 of the $85,082.68 principal sought; for Prophete, over $29,000 in interest and about $3,400 of the $61,932.31 principal sought; for Regalado, over $20,000 in interest and about $2,800 of the $76,962.15 principal sought; for Tyrone Stewart, over $27,000 in interest and about $19,000 of

the $61,942.12 principal sought; and for the Ogbennayas, over $63,000 in interest and about $6,100 of the $111,850.95 principal sought.  Third Am. Compl. ¶¶ 38, 64, 85, 110, 139, 158, 184, 209, 235.  Plaintiffs also allege that because R&F did not disclose "that some of the amounts demanded" in each complaint "were outside the statute of limitations," plaintiffs "did not know that some of the amount demanded was not legally collectible."  *Id.* ¶¶ 39, 65, 86, 111, 140, 159, 185, 210, 236.

Prior to receiving a foreclosure complaint, the Elmines, Jones, the Okoronkwos, and Regalado also received notices from SNSC seeking to collect similar amounts of debt on which the applicable statute of limitations had expired.  *See id.* ¶¶ 62, 83, 135, 180.  Prophete received a similar notice from SNSC, but after the foreclosure action against her had been filed.  *See id.* ¶¶ 164, 166.  The notice the Okoronkwos received from SNSC "threatened foreclosure" and "threatened to sue" for "interest and principal payments, [of] approximately $40,000[,] that were outside New York's statute of limitations."  *Id.* ¶¶ 135–36.  Specifically, the notice warned, in all-capital letters, that SNSC "may commence legal action against you" if "you have not taken any actions to resolve this matter within 90 days," and that "[y]ou are at risk of losing your home."  SNSC Mot., Ex. 2 (Dkt. #70-2).  Regalado received a similar notice, seeking "payments, [of] nearly $20,000[,] that were outside New York's statute of limitations."  Third Am. Compl. ¶¶ 180–81.

Plaintiffs further allege, based on public records, that R&F represented various entities "nearly 100 foreclosure actions in the New York State courts in 2020 and 2021," that the "vast majority" of those actions sought payment of debt "barred by New York's statute of limitations," and that SNSC was involved "in many of these" actions.  *Id.* ¶¶ 244–46.

The third amended complaint alleges six ways in which plaintiffs sustained injury.

First, plaintiffs allege that they experienced emotional distress, including "anxiety" and "depression," as well as physical harms arising out of such distress, such as "insomnia" and "elevated blood pressure." *Id.* ¶ 6; *see id.* ¶¶ 45, 70, 91, 117, 145, 167, 191, 216, 241, 256, 264. Specifically, Cruz and Perez claim that they were "terrified" and "fear[ed] that they might be evicted at any time," that they "lost endless nights of sleep," and that Cruz's distress caused "insomnia," "exacerbated his kidney disease," and resulted in him needing "dialysis" and a kidney transplant. *Id.* ¶¶ 41, 45. The Elmines allege that they "were terrified they would lose their home," "lost sleep," "suffered a loss of trust between them[,] and separated as a result." *Id.* ¶ 66. Jones "feared that she would lose her home," "felt stressed and panicked," and "began to suffer headaches" as a result. *Id.* ¶ 90. Lombardo also feared that she would lose her home, "lost sleep[,] and began to suffer from headaches. *Id.* ¶¶ 112, 117. The Okoronkwos were "devastated" and "terrified they might lose the[ir] home," and they "suffered stress," "lost sleep," and "headaches," which "aggravated Mr. Okoronkwo's high blood pressure." *Id.* ¶ 143. Prophete was "devasted" and "terrified" that "she would lose her home" and "suffered stress" and "panic attacks." *Id.* ¶ 163. Regalado "felt shock and intense fear that he might lose his home," he "panicked and began to lose sleep," and he felt "depressed" and "anxious." *Id.* ¶¶ 182, 189. Stewart feared he would lose his home and "was unable to sleep" as a result. *Id.* ¶¶ 211, 216. The Ogbennayas were "terrified that they might lose their family home," were "devastated that the lawsuit caused their children heartache and worry," and were left "in poorer . . . physical health" as a result. *Id.* ¶ 240–41. Each plaintiff further alleges that the emotional distress resulted from the fact that he or she "did not believe that [he or she] could pay off the total for all of the years of payments sought in" each foreclosure complaint. *Id.* ¶¶ 41, 66, 90, 112, 143, 163, 189, 211, 240.

Second, plaintiffs assert that because they "could not know what amounts were time-barred without the help of legal counsel," they "lost wages" and paid "for transportation and parking" to attend appointments with counsel that were "necessary" both "to determine that only some amounts could legally be collected and to answer the foreclosure complaint" to assert a statute-of-limitations defense. *Id.* ¶¶ 6, 42, 67, 87, 113, 141, 160, 186, 213, 237. Cruz and Perez "had to pay subway fare of over $10 to go to multiple appointments with an attorney." *Id.* ¶ 42. The Elmines "had to pay over $50 for gas" and "over $5 for parking" to visit a housing counsel and an attorney, and they paid about "$20 to make copies of documents for the attorney." *Id.* ¶ 67. Stewart "had to miss four hours of work and forgo over $150 in pay to go to the courthouse to get counsel." *Id.* ¶ 213. Other plaintiffs incurred similar expenses and lost time to meet with counsel. Jones paid over $20 for parking and over $50 to make copies, *id.* ¶ 87; Lombardo paid "for gas to drive more than ten miles," *id.* ¶ 113; the Okoronkwos paid $7 in parking and $15 to make copies, *id.* ¶ 141; Prophete "took time off of work without pay" and paid more than $1 for faxing, *id.* ¶ 160; Regalado paid subway fare and $2 to make copies, *id.* ¶ 186; and the Ogbennayas paid more than $1 for gas and parking, *id.* ¶ 237.

Third, plaintiffs claim that the "additional arrears" defendants sought, for which the statute of limitations had expired, prevented plaintiffs "from considering available loan and grant programs they could have otherwise used to resolve the debts." *Id.* ¶ 7; *see id.* ¶¶ 43, 68, 88, 114, 142, 161, 187, 214, 238.

Fourth, plaintiffs allege that R&F's and SNSC's actions have "damage[d] . . . their credit rating and impair[ed] . . . their ability to obtain credit." *Id.* ¶¶ 255, 263.

Fifth, plaintiffs claim they sustained "damage to [their] reputation[s]." *Id.* ¶¶ 256, 264.

Sixth, Lombardo alone claims that she "obtained payoff assistance from the New York Homeowner Assistance Fund," which paid off about "$3,300 in time-barred principal and resulted in "a lien on her home for amounts including [that] time-barred sum." *Id.* ¶ 116.

The parties represent that there are no longer foreclosure actions pending against the Elmines, Jones, Regaldo, Lombardo, and the Ogbennayas. *See* Mem. of Law in Supp. of R&F's Mot. to Dismiss ("R&F Mot.") 5 (Dkt. #66-1); SNSC's Mem. of Law in Supp. of Mot. to Dismiss ("SNSC Mot.") 19 (Dkt. #70-1); Opp'n to SNSC Mot. 20 (Dkt. #70-5).

## II. Procedural History

This lawsuit was filed in September 2021. *See* Compl. (Dkt. #1). In the operative, third amended complaint, all plaintiffs assert that R&F violated 15 U.S.C. §§ 1692e and 1692f and the Okoronkwos assert that SNSC also violated 15 U.S.C. § 1692e. Third Am. Compl. ¶¶ 248–65. The Okoronkwos, the Elmines, Jones, Prophete, and Regalado also assert claims against SNSC under GBL § 349. *Id.* ¶¶ 266–76. Plaintiffs seek compensatory damages including pain, suffering, and emotional distress, as well as statutory damages, attorney's fees and costs, and an injunction against SNSC under New York's Deceptive Practices Act. *Id.* at 45–46.

R&F and SNSC each move to dismiss all claims against them for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* R&F Mot.; SNSC Mot. SNSC, in the alternative, seeks to stay this case under the *Colorado River* abstention doctrine.

## DISCUSSION

Defendants' motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6) are denied, as is SNSC's motion to stay this case under the *Colorado River* abstention doctrine.

## I.     Defendants' Rule 12(b)(1) Motions to Dismiss

Defendants' motions to dismiss under Rule 12(b)(1) are denied because each plaintiff has adequately alleged that he or she has standing.

### A.     Standard of Review

Rule 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In assessing whether a claim should be dismissed for lack of subject-matter jurisdiction under this rule, a court "must take all uncontroverted facts in the complaint . . . as true[] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "But 'where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings.'" *Ibid.* (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)) (brackets omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.

### B.     Analysis

Each plaintiff has alleged standing adequately to establish subject-matter jurisdiction at this stage of the case.

The federal judicial power is limited to the adjudication of "Cases" and "Controversies." U.S. Const. art. III, § 2. "'Under Article III, a case or controversy can exist only if a plaintiff has standing to sue,' meaning a personal stake in the outcome of the litigation." *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 45 (2d Cir. 2023) (en banc) (quoting *United States v. Texas*, 599 U.S. 670, 675 (2023)). Standing does not exist in every case in which "a statute grants a person a

statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Instead, to establish standing, "a plaintiff must show (i) that [she has] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The 'manner and degree of evidence required' to meet this burden depends on the stage of litigation." *Soule*, 90 F.4th at 45 (quoting *Lujan*, 504 U.S. at 561); *see Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 122 (2d Cir. 2025) (per curiam). Even though, after discovery, the plaintiff "must set forth by affidavit or other evidence specific facts," at "the pleading stage," plausible "factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561 (quotation marks and citations omitted); *accord Do No Harm*, 126 F.4th at 113–14.

Because plaintiffs' request for damages means that the requirement of redressability is satisfied, *see Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380–81 (2024); *Soule*, 90 F.4th at 47, the elements in dispute are injury in fact and causation.

### 1. Injury in fact

Each plaintiff has adequately pleaded an injury in fact. "To constitute an injury in fact sufficient to sustain Article III standing, an alleged harm must be (1) concrete, (2) particularized, and (3) actual or imminent." *Soule*, 90 F.4th at 45 (citing *TransUnion*, 594 U.S. at 423). Plaintiffs principally rely on injuries in the form of emotional distress due to, and out-of-pocket expenses and lost time to mitigate, the threat of foreclosure each of them faced. *See* Third Am. Compl. ¶ 6. Plaintiffs have adequately pleaded that those injuries are actual and particularized because they were allegedly sustained in connection with foreclosure notices and proceedings specific to each

plaintiff. Whether plaintiffs have adequately pleaded an injury in fact therefore turns on whether those asserted injuries are concrete.

"To be concrete, an injury must be 'real, and not abstract.'" *Soule*, 90 F.4th at 45 (citing *TransUnion*, 594 U.S. at 424). "[A]lleged statutory violations," without more, do not suffice; rather, the concreteness inquiry centers on whether the asserted injuries bear a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 284 (2d Cir. 2023) (quoting *TransUnion*, 594 U.S. at 424) (quotation marks omitted). "While traditional tangible harms such as physical and monetary injuries readily qualify as concrete, so do some intangible harms, particularly if they have a 'close historical or common-law analogue.'" *Soule*, 90 F.4th at 45 (quoting *TransUnion*, 594 U.S. at 424). When plaintiffs sue for damages, "the mere risk of future harm, standing alone, cannot qualify as a concrete harm" unless the exposure to that risk itself causes the plaintiff to "suffer[] some other injury []such as an emotional injury." *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 63 (2d Cir. 2021) (quoting *TransUnion*, 594 U.S. at 436–37).

The injuries plaintiffs assert—emotional distress, out-of-pocket expenses, and lost time— can amount to concrete injury. Emotional distress regarding a risk of future injury is the sort of harm "that *TransUnion* contemplated might form the basis for Article III standing." *Maddox*, 19 F.4th at 65; *see TransUnion*, 594 U.S. at 436–37, 436 n.7; *Bohnak*, 79 F.4th at 285, 287; *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 155–56 (3d Cir. 2022); *Calogero v. Shows, Cali & Walsh, L.L.P.*, 95 F.4th 951, 958–59 (5th Cir. 2024); *Gerber v. Herskovitz*, 14 F.4th 500, 504–06 (6th Cir. 2021); *Cavazzini v. MRS Assocs.*, 574 F.Supp.3d 134, 140 (E.D.N.Y. 2021); *but see Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 977 (7th Cir. 2023) ("[W]e have held that worry and anxiety are not the kind of concrete injury essential to standing."). That said, a "perfunctory allegation of

emotional distress, especially one wholly incommensurate with the stimulant, is insufficient." *Maddox*, 19 F.4th at 66. The plaintiff, after all, "must plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief." *Id.* at 65–66 (quotation marks and citation omitted). The asserted emotional-distress injury must also be at least comparable to its historical, common-law analogue, *see TransUnion*, 594 U.S. at 424, which only covers distress of such intensity or duration "that no reasonable man could be expected to endure it," Restatement (Second) of Torts § 46 cmt. j (Am. L. Inst. 1965); *see Garland v. Orlans, PC*, 999 F.3d 432, 439–40 (6th Cir. 2021).

Similarly, a plaintiff may satisfy the concrete-injury requirement by plausibly alleging "out-of-pocket expenses" and "lost time . . . associated with attempting to mitigate" a risk of future injury. *Bohnak*, 79 F.4th at 286; *see Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 148–49 (3d Cir. 2023); *Onfroy v. Law Offs. of Geoffrey T. Mott, P.C.*, 751 F.Supp.3d 195, 201–02 (E.D.N.Y. 2024). But because a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on . . . fears of hypothetical future harm that is not certainly impending," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013), out-of-pocket expenses and lost time must "foreseeably aris[e] from . . . a material risk of future harm" in order to "independently support standing," *Bohnak*, 79 F.4th at 286; *see Onfroy*, 751 F.Supp.3d at 202; *Wolkenfeld v. Portfolio Recovery Assocs., LLC*, No. 22-CV-1156 (PKC) (CLP), 2022 WL 1124828, at *2 (E.D.N.Y. Apr. 14, 2022) (noting that "spending time and money" due to "concern and confusion" can suffice as concrete injury where the plaintiff "spends time, money, and effort" to mitigate "a sufficient risk of harm" (brackets, emphasis, and citation omitted)).

Here, each plaintiff has adequately pleaded that he or she sustained concrete injuries from the threat of foreclosure—in the form of emotional distress due to that threat and out-of-pocket

expenses and lost time spent mitigating that threat.[*]  Each plaintiff plausibly alleges that he or she sustained emotional distress acute enough to cause physical symptoms like insomnia and headaches.  *E.g.*, Third Am. Compl. ¶¶ 6, 41, 90; *Makhnevich v. Bougopoulos*, No. 18-CV-285 (KAM) (VMS), 2022 WL 939409, at *5 n.7 (E.D.N.Y. Mar. 29, 2022) (finding standing where plaintiff asserted "that she has experienced severe headaches and stomach aches"), *aff'd*, No. 22-936, 2024 WL 1653464 (2d Cir. Apr. 17, 2024); *cf.* Restatement (Second) of Torts § 46 cmt. k (noting that "shock, illness, or other bodily harm" that follows from emotional distress "affords evidence that the distress is genuine and severe").

To be sure, courts in this Circuit have generally found allegations of "distress or anxiety" insufficient when premised on the plaintiff simply receiving an erroneous collection letter.  *See Clarke v. McCabe, Weisburg & Conway, LLC*, No. 22-CV-3289 (RPK) (PK), 2022 WL 3030347, at *3 (E.D.N.Y. Aug. 1, 2022) (collecting cases); *see also* R&F Mot. 10–11; SNSC Reply 3, 5–6 (Dkt. #70-7).  But it is at least plausible that plaintiffs experienced the degree of emotional distress they allege here, given the threat of foreclosure against each of their homes.  *See Thome v. Sayer L. Grp., P.C.*, 567 F. Supp. 3d 1057, 1077 (N.D. Iowa 2021); *Benjamin v. Rosenberg & Assocs., LLC*, No. 19-CV-3012 (RDM), 2021 WL 3784320, at *6 (D.D.C. Aug. 26, 2021); *see also Calogero*, 95 F.4th at 958–59 (finding standing where the plaintiff alleged emotional distress based "the prospect of losing her home").  That is especially so here, where each plaintiff plausibly alleges that the threat of foreclosure was predicated on tens of thousands of dollars of high-interest junior-lien mortgage debt that he or she believed had been canceled several years prior.  *E.g.*, Third

---

[*] Lombardo has adequately pleaded that she sustained a concrete injury based on the allegation, unique to her, that she "obtained payoff assistance" which repaid about "$3,300 in time-barred" debt and resulted in a new "lien on her home for amounts including [that] time-barred sum."  Third Am. Compl. ¶ 116.  That lien has placed an "actionable cloud" on Lombardo's "title to the property securing the [time-barred] mortgage debt," and "such harms" suffice for a concrete injury under Article III.  *Maddox*, 19 F.4th at 64.

Am. Compl. ¶¶ 3, 59; *Carrasquillo v. Nat'l Credit Sys., Inc.*, No. 24-CV-1029 (AT), 2025 WL 522276, at *3 (S.D.N.Y. Feb. 18, 2025).

The alleged factual context for plaintiffs' asserted emotional-distress injury "make it plausible that they did indeed suffer [that] sort of injury," which distinguishes plaintiffs' FDCPA claims from others where such a physiological reaction is "wholly incommensurate with the stimulant." *Maddox*, 19 F.4th at 65–66; *see Benjamin*, 2021 WL 3784320, at *6; *cf., e.g.*, *Adler v. Penn Credit Corp.*, No. 19-CV-7084 (KMK), 2022 WL 744031, at *1, *9 (S.D.N.Y. Mar. 11, 2022) (holding that the plaintiff failed to explain why a $122.14 collection letter caused his alleged emotional distress, "particularly when contrasted with other instances in which . . . emotional harms were plainly evident" (citing *Benjamin*, 2021 WL 3784320, at *6)); *Spitz v. Caine & Weiner Co., Inc.*, No. 23-CV-7853 (PKC) (CLP), 2024 WL 69089, at *1, *3 (E.D.N.Y. Jan. 5, 2024) (finding no basis for alleged emotional distress where the plaintiff "received a collection notice" listing "two different balances[, $1232.38 and $1245.49], with no explanation for the difference."). The common law has long recognized that the degree of emotional distress necessary to sustain a tort claim can result from similar debt-collection efforts. *See George v. Jordan Marsh Co.*, 268 N.E.2d 915, 919–21, 919 n.6 (Mass. 1971) (collecting cases); *see, e.g.*, *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 273 (D. Conn. 2017) ("[A] claim for negligent infliction of emotional distress can arise in relation to the service of a mortgage." (citation omitted)); *Moore v. McCalla Raymer, LLC*, 916 F. Supp. 2d 1332, 1344 n.14 (N.D. Ga. 2013) ("Intentional wrongful foreclosure can be the basis for an action for intentional infliction of emotional distress." (brackets and citation omitted)).

For similar reasons, each plaintiff also plausibly alleges that he or she incurred out-of-pocket expenses and lost time "associated with defending a state-court lawsuit" that involved

"false or misleading claims." *Bristol v. Forster & Garbus, LLP*, No. 23-CV-1678 (RPK) (MMH), 2024 WL 579696, at *2 (E.D.N.Y. Feb. 13, 2024) (citing *Millwood v. Adams*, No. 20-CV-1035 (LPR), 2021 WL 4466309, at *8 (E.D. Ark. Sept. 29, 2021)); *see, e.g.*, Third Am. Compl. ¶ 42. Those legal-defense costs "foreseeably [arose] from . . . a material risk of future harm," *Bohnak*, 79 F.4th at 286—the threat of a default judgment of foreclosure based in part on time-barred debt. In that context, such costs amount to concrete injury based on multiple "common-law analogue[s]," *TransUnion*, 594 U.S. at 424, including fraudulent misrepresentation, *see Huber*, 84 F.4th at 148–49, and abuse of process, *see Onfroy*, 751 F.Supp.3d at 202; *Makhnevich*, 2022 WL 939409, at *5 n.7; *Benjamin*, 2021 WL 3784320, at *6.

Because plaintiffs have plausibly alleged they each sustained concrete injury, they have adequately pleaded injury in fact.

### 2. Causation

Plaintiffs have adequately pleaded that their concrete injuries are fairly traceable to defendants' attempts to collect debt for which the applicable statute of limitations had expired. At this stage, a plaintiff must plausibly allege that her asserted injury is "fairly traceable" to the challenged action of the defendant. *Moreira v. Societe Generale, S.A.*, 125 F.4th 371, 386 (2d Cir. 2025) (citation omitted). The "line of causation between the illegal conduct and injury . . . must not be too speculative or too attenuated." *Food & Drug Admin.*, 602 U.S. at 383. The showing required for traceability, however, is "lower than for proximate causation." *Ateres Bais Yaakov Acad. of Rockland v. Town of Clarkstown*, 88 F.4th 344, 353 (2d Cir. 2023) (citing *Dep't of Com. v. New York*, 588 U.S. 752, 767–68 (2019)); *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014).

Plaintiffs' factual allegations plausibly suggest that their concrete injuries—emotional distress, out-of-pocket expenses, and lost time—are at least fairly traceable to defendants' attempt

to collect time-barred debt.  Each plaintiff alleges that his or her emotional distress stemmed from the belief that he or she could not "pay off the total for all of the years of payments sought in" each foreclosure complaint.  *E.g.*, Third Am. Compl. ¶ 41.  Those total amounts included time-barred debt ranging from about $10,000 to over $70,000 for each plaintiff.  *See* pages 3–4, *supra*.  However likely it is that plaintiffs' emotional distress "is rooted in" the general "fact of default" on their mortgages, *Garland*, 999 F.3d at 440–41, it is at least plausible that such distress is *also* fairly traceable to the substantial amounts of time-barred debt underlying the threat of foreclosure asserted in R&F's complaints and SNSC's notices—"at least in the absence of evidence undermining" that inference, *Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 161 (E.D.N.Y. 2022).  Plaintiffs have thus plausibly alleged that the challenged conduct "was a cause of [their] distress," even if it was "not the only cause."  *Thome*, 567 F. Supp. 3d at 1079; *see Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 974 F. Supp. 2d 353, 358–59 (S.D.N.Y. 2013), *aff'd*, 769 F.3d 105 (2d Cir. 2014).  In emphasizing other causes of distress— namely plaintiffs' responsibility for defaulting on non-time-barred debt and the fact a foreclosure action was brought, *see* R&F Mot. 11; SNSC Mot. 13; SNSC Reply 5—defendants' "reasoning sounds in proximate cause, which . . . overstates the showing that is required" at the pleading stage, *Ateres*, 88 F.4th at 352; *see New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d 502, 621–22 (S.D.N.Y.), *aff'd in relevant part*, 588 U.S. 752 (2019).

Each plaintiff's factual allegations also plausibly suggest that at least some portion of the out-of-pocket expenses and lost time spent mitigating the threat of foreclosure is fairly traceable to R&F's inclusion of time-barred debt in the foreclosure complaints it filed.  Each plaintiff alleges that at least some of his or her out-of-pocket expenses and lost time were spent attending appointments with counsel that were "necessary" both "to determine that only some amounts could

legally be collected and to answer the foreclosure complaint" to assert a statute-of-limitations defense. *E.g.*, Third Am. Compl. ¶ 42. Those costs are "fairly traceable" to the "false or misleading statements" R&F included in the complaints it filed. *Bristol*, 2024 WL 579696, at *2 (citing *Millwood*, 2021 WL 4466309, at *8). That remains so even if each plaintiff initially sought counsel *before* he or she was aware that the foreclosure filings included time-barred debt. *See* R&F Reply 2 (Dkt. #68). Plaintiffs' theory of causation "relies . . . on the predictable effect" that seeking foreclosure on old debts has on the debtor—the debtor's dedication of some legal-defense resources towards developing a statute-of-limitations defense. *Dep't of Com.*, 588 U.S. at 768; *see Ateres*, 88 F.4th at 352–53 (rejecting contention that adequately pleading causation requires alleging that the defendant's "conduct had a determinative . . . effect" on the infliction of plaintiff's injury).

R&F argues that *all* the costs on which plaintiffs rely "are clearly to defend the foreclosure action, rather than to assert the Statute of Limitations defense," but the evidence on which it relies does not support that conclusion. R&F Reply 2–5; *see* R&F Mot. 12–13. R&F submits various answers filed in New York foreclosure actions, including plaintiffs'. R&F emphasizes that each plaintiff's answer asserts other defenses besides the statute of limitations and that the text of each plaintiff's statute-of-limitations defense is "boilerplate and conclusory" language routinely included in such answers. R&F Reply 2; *see id.* at 3–5; R&F Mot. 13. R&F's evidence suggests that each plaintiff likely incurred little to no cost in drafting the text of each statute-of-limitations defense. That evidence does not, however, undermine each plaintiff's allegation that he or she *also* spent money and time meeting with legal counsel "to determine that only some amounts could legally be collected" under the statute of limitations. *E.g.*, Third Am. Compl. ¶ 42.

Plaintiffs have thus met their "relatively modest" burden to adequately plead causation to establish standing at this stage of the case. *Moreira*, 125 F.4th at 386 (citation omitted). Accordingly, defendants' motions to dismiss under Rule 12(b)(1) are denied.

## II.     Defendants' Rule 12(b)(6) Motions to Dismiss

Defendants' motions to dismiss under Rule 12(b)(6) are denied.

### A.     Standard of Review

Rule 12(b)(6) directs a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation marks and citation omitted).

At the motion-to-dismiss stage, a court may consider only (1) the complaint itself, (2) documents either attached to the complaint or incorporated in it by reference, (3) documents the plaintiff relied on and knew of when bringing suit, and (4) matters in the public record that are subject to judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). When reviewing the complaint, a court must accept the well-pleaded factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). The court, however, is not

obligated to adopt "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Iqbal*, 556 U.S. at 678–79.

### B. Analysis

Plaintiffs' claims are adequately pleaded.

#### 1. Section 1692e claims against R&F

Each plaintiff adequately pleads an FDCPA claim under Section 1692e against R&F.

The FDCPA "authorizes private civil actions against debt collectors who engage in certain prohibited practices." *Rotkiske v. Klemm*, 589 U.S. 8, 9 (2019). To state a claim under that statute, a plaintiff generally must plead that (i) the plaintiff is a "consumer," (ii) the defendant is a "debt collector," and (iii) the defendant committed an act or omission that amounts to a violation of the FDCPA. *See, e.g.*, *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559–60 (E.D.N.Y. 2017), *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 529 (S.D.N.Y. 2013). R&F does not dispute for purposes of its motion to dismiss that plaintiff is a consumer and it is a debt collector for the purposes of the FDCPA. R&F Mot. 15 n.1.

Each plaintiff asserts that R&F violated Section 1692e of the FDCPA. Section 1692e bars a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. In determining whether a collection letter violates Section 1692e, the Second Circuit assesses the letter from the perspective of the "least sophisticated consumer." *Bryan v. Credit Control, LLC*, 954 F.3d 576, 582 (2d Cir. 2020) (citation omitted). Such a consumer "does not have the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (quotation marks and citation omitted). But such a consumer "is neither irrational nor a dolt," and a court must be "careful not to conflate lack of sophistication with unreasonableness." *Ibid.*

18

Section 1692e lists several examples of violative conduct. One example is the false representation of the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A). The Second Circuit has interpreted Section 1692e as proscribing "even a partial misstatement of a consumer's debt obligation." *Vangorden v. Second Round, L.P.*, 897 F.3d 433, 442 (2d Cir. 2018) (discussing plaintiff's claims under Sections 1692e and 1692f). But "a false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated consumer." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 85 (2d Cir. 2018) (brackets and citation omitted).

Each plaintiff has adequately pleaded a Section 1692e claim against R&F under these principles. Given Section 1692e's express prohibition against misrepresenting a debt's legal status, courts have overwhelmingly held that filing or threatening to file lawsuits to collect a time-barred debt, without disclosing that the statute of limitations may affect its enforceability, violates FDCPA Section 1692e. *See, e.g.*, *Gold v. Shapiro, Dicaro & Barak, LLC*, No. 18-CV-6787 (PKC) (SJB), 2019 WL 4752093, at *7 (E.D.N.Y. Sept. 30, 2019); *Cameron v. LR Credit 22, LLC*, 998 F. Supp. 2d 293, 300 (S.D.N.Y. 2014); *Calogero*, 95 F.4th at 959; *Snyder v. Finley & Co., L.P.A.*, 37 F.4th 384, 387 (6th Cir. 2022); *Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 683 (7th Cir. 2017); *see also Midland Funding, LLC v. Johnson*, 581 U.S. 224, 238 (2017) (Sotomayor, J., dissenting) ("Every court to have considered the question has held that a debt collector that knowingly files suit in court to collect a time-barred debt violates the FDCPA."). And even though, as plaintiffs acknowledge, a substantial portion of the debt on which foreclosure was sought was not time-barred, "even a partial misstatement of a consumer's debt obligation can be misleading under the FDCPA." *Vangorden*, 897 F.3d at 442.

Resisting *Vangorden*, R&F argues that the amount of time-barred debt listed in the foreclosure complaints it filed was "*de minimis*" and "non-material" as a matter of law. R&F Mot. 18–21. But even if some minor misstatements would not have "the potential to affect the decision-making process of the least sophisticated consumer," *Cohen*, 897 F.3d at 85 (brackets and citation omitted), misrepresentations as to the enforceability of about $10,000 to over $70,000 in debt do not qualify as *de minimis* or immaterial as a matter of law at the pleading stage. Moreover, contrary to R&F's assertion, plaintiffs do not "read into each mortgage foreclosure complaint a specific demand for interest." *See* R&F Mot. 21. Each foreclosure complaint plainly seeks interest based on a specified percentage, principal, and time period. *See* pages 3–4, *supra*. That the least sophisticated consumer—"neither irrational nor a dolt," *Ellis*, 591 F.3d at 135—would interpret those figures to reflect a substantial sum of interest is at least plausible, and far from "bizarre and idiosyncratic," R&F Mot. 20 (citing *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993)).

R&F's related argument—that foreclosing on a partially time-barred debt is "not the proper subject of an FDCPA action" because state courts will "protect the consumer from a debt collector's fraudulent or harassing behavior"—is similarly unpersuasive. R&F Mot. 21–22 (quoting *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 95 (2d Cir. 2012)). *Gabriele* explicitly distinguished the debt collector's self-evident, "technical falsehoods" asserted in state-court filings against a consumer "represented by counsel," which could not sustain an FDCPA claim, from misrepresentations "as to the nature or legal status of [the consumer]'s debt," which could. 503 F. App'x at 95–96. Here, each plaintiff states a plausible FDCPA claim by alleging that R&F misrepresented the nature or legal status of his or her debt in foreclosure complaints before he or she secured legal representation. *See Gold*, 2019 WL 4752093, at *7–8 (distinguishing *Midland* and noting that a consumer "brought into state court as a defendant, [does]

not have the benefit of a bankruptcy trustee to guide him through the unfamiliar process of a foreclosure proceeding").

Accordingly, R&F's motion to dismiss plaintiffs' Section 1692e claims is denied.

### 2. Section 1692f claims against R&F

Each plaintiff adequately pleads an FDCPA claim under Section 1692f against R&F. Section 1692f of the FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The Second Circuit has explained that a plaintiff states a claim under Section 1692f(1) "by pleading that defendant attempted to collect an amount not authorized by agreement or permitted by law." *Vangorden*, 897 F.3d at 438 (citing 15 U.S.C. § 1692f(1)). Once those allegations are pled, the plaintiff does not need to plead any "further allegations of unfairness or unconscionability." *Ibid.*

Here, plaintiffs have adequately pleaded that R&F "attempted to collect an amount not . . . permitted by law." *Vangorden*, 897 F.3d at 438 (citing 15 U.S.C. § 1692f(1)). As with Section 1692e, courts have overwhelmingly recognized that filing or threatening to file lawsuits to collect a time-barred debt, without disclosing that the statute of limitations may affect its enforceability, violates Section 1692f. *See, e.g.*, *Diaz v. Portfolio Recovery Assocs., LLC*, No. 10-CV-3920 (MKB) (CLP), 2012 WL 1882976, at *5 (E.D.N.Y. May 24, 2012); *Kaiser v. Cascade Cap., LLC*, 989 F.3d 1127, 1133 (9th Cir. 2021); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013) (collecting cases); *see also Midland*, 581 U.S. at 238 (Sotomayor, J., dissenting) (summarizing lower court practice). And plaintiffs' allegations remain adequate under Section 1692f notwithstanding that only a portion of the of the total amount sought was not legally enforceable. *See, e.g.*, *Finch v. Slochowsky & Slochowsky, LLP*, No. 19-CV-6273 (RPK), 2020 WL 5848616, at *4 (E.D.N.Y. Sept. 30, 2020).

R&F is mistaken in arguing that plaintiffs' Section 1692f claims must be dismissed as duplicative of their 1692e claims. *See* R&F Mot. 17. The Second Circuit has expressly rejected the argument "that the same conduct by a debt collector cannot violate both sections." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017). While those two provisions target "different type[s] of misconduct," a "collection practice could be both deceptive and unfair." *Id.* at 135–36. Plaintiffs have adequately pleaded violations of both provisions here.

Accordingly, R&F's motion to dismiss plaintiffs' Section 1692f claims is denied.

### 3. Section 1692e claims against SNSC

The Okoronkwos have adequately pleaded FDCPA claims under Section 1692e against SNSC, for largely the same reasons.

SNSC tries to distinguish the notices it sent from the foreclosure complaints R&F filed, arguing that the notices "simply [sought] to collect voluntary payments on a time-barred debt." SNSC Mot. 13; *see* SNSC Reply 3. But the notices themselves undermine the first argument, expressly warning, in all-capital letters, that SNSC "may commence legal action against you" if "you have not taken any actions to resolve this matter within 90 days," and adding, again in all-capital letters, "You are at risk of losing your home." SNSC Mot., Ex. 2. As SNSC does not dispute, courts generally treat threatening a collection lawsuit on time-barred debt the same as filing such a lawsuit under the FDCPA. *See, e.g.*, *Hollander v. Alliant Cap. Mgmt., LLC*, No. 18-CV-2808 (DLI) (VMS), 2019 WL 1471086, at *2 & n.1 (E.D.N.Y. Mar. 31, 2019) (collecting cases); *Baptist v. Glob. Holding & Inv. Co.*, No. 04-CV-2365 (DGT), 2007 WL 1989450, at *4 (E.D.N.Y. July 9, 2007); *Calogero*, 95 F.4th at 957, 959; *Kaiser*, 989 F.3d at 1133; *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001).

SNSC is also mistaken in arguing that its statements cannot sustain an FDCPA claim because New York and federal law require that mortgage account statements include "the total

amounts past due," SNSC Mot. 12–13; SNSC Reply 3; *see* 12 C.F.R. § 1026.41(d)(8)(vi) (requiring that periodic mortgage statements to include "[t]he total payment amount needed to bring the account current"); N.Y. R.P.A.P.L. § 1304 (requiring that the requisite notice "include" certain language, including the amount of "days and . . . dollars in default"). SNSC did not merely note the total amounts past due in the challenged letters but accompanied that statement with threats of legal action that implied SNSC had a legal right to collect the amounts described. Further, while SNSC argues that it was required to include the total amount past due in its notices, SNSC provides no basis to conclude that it would have violated any legal obligation for SNSC to disclose—alongside its balance statement and threat of legal action—that "a limitations period might affect judicial enforceability," in order to prevent their communications from deceiving consumers about the collectability of the sums that the letters described. *Calogero*, 95 F.4th at 959.

Accordingly, SNSC's motion to dismiss the Okoronkwos' Section 1692e claims is denied.

### 4.    GBL § 349 claims against SNSC

The Okoronkwos, the Elmines, Jones, Prophete, and Regalado have adequately pleaded GBL § 349 claims against SNSC. GBL § 349 outlaws "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." GBL § 349(a). To state a claim under this provision, a plaintiff must allege that (i) that the defendant engaged in consumer-oriented conduct, (ii) the defendant's conduct was materially misleading, and (iii) the plaintiff was injured as a result of the defendant's conduct. *See Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017).

SNSC argues that plaintiffs fail to adequately plead the second and third requirements and that their claims are, in any event, barred by the *Noerr-Pennington* doctrine. Plaintiffs adequately plead the second requirement for a claim under GBL § 349 for the same reasons they state a claim

under FDCPA Section 1692e. While GBL § 349 requires that the alleged misrepresentation be "likely to mislead a reasonable consumer," *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995), which imposes a higher burden than the least-sophisticated-consumer standard, plaintiffs' allegations plausibly satisfy that burden here for the reasons discussed above, *see, e.g.*, *Fritz v. Resurgent Cap. Servs., LP*, 955 F. Supp. 2d 163, 174 (E.D.N.Y. 2013).

Plaintiffs adequately plead the third requirement as well. Because it is well established that "[e]motional harm satisfies the injury requirement for a claim under GBL § 349," *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 706–07 (S.D.N.Y. 2019) (brackets, ellipses, and citation omitted), plaintiffs adequately plead actual injury for the same reasons they plausibly allege concrete emotional distress for the purposes of Article III standing, *see* pages 8–17, *supra*. *See, e.g.*, *Rozier v. Fin. Recovery Sys., Inc.*, No. 10-CV-3273 (DLI) (JO), 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011); *Wood v. Cap. One Servs., LLC*, 718 F. Supp. 2d 286, 292 (N.D.N.Y. 2010).

Finally, SNSC has not established that the *Noerr-Pennington* doctrine bars plaintiffs' GBL § 349 claims. In *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) and *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965), the Supreme Court interpreted the Sherman Act, in light of "First Amendment principles," to exclude "concerted petitions for anti-competitive legislation," including "concerted actions before courts and administrative agencies." *Primetime 24 Joint Venture v. Nat'l Broad., Co.*, 219 F.3d 92, 99–100 (2d Cir. 2000) (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 508, 510–11 (1972)); *see also Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 615 (6th Cir. 2009) (noting that the doctrine constitutes a "rule of statutory construction" (quoting *Sosa v. DIRECTV, Inc.*, 437

F.3d 923, 931 (9th Cir. 2006))). The *Noerr-Pennington* doctrine has been extended to "all petitioning activity," including "concerted efforts incident to litigation, such as pre-litigation threat letters and settlement offers." *Singh v. NYCTL 2009-A Tr.*, 683 F. App'x 76, 77 (2d Cir. 2017) (quoting *Primetime*, 219 F.3d at 100). Excepted from the doctrine, however, is "sham litigation" that is both "objectively baseless" and "intended to cause harm to the defendant 'through the use of the governmental process.'" *T.F.T.F. Cap. Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002) (quotation marks, brackets, emphasis, and citation omitted); *see Cal. Motor Transp.*, 404 U.S. at 513 ("Misrepresentations, condoned in the political arena, are not immunized when used in the adjudicatory process."); *cf. Hartman*, 569 F.3d at 616 ("[T]he Petition Clause protects legitimate petitioning but not sham petitions, baseless litigation, or petitions containing 'intentional and reckless falsehoods.'" (quoting *McDonald v. Smith*, 472 U.S. 479, 484 (1985)).

Plaintiffs adequately plead GBL § 349 claims that fall within the "sham" exception to the *Noerr-Pennington* doctrine. Those claims are predicated specifically on SNSC's threat to foreclose on debt payments for which the applicable statute of limitations had clearly expired, a threat that plaintiffs allege SNSC has made in many of the "nearly 100 foreclosure actions" that R&F filed in 2020 and 2021. *See* Third Am. Compl. ¶¶ 244–46, 269, 272. A state-court action to collect on debt that is clearly time-barred is "objectively baseless," *Fritz*, 955 F. Supp. 2d at 176–77; *see Gold*, 2019 WL 4752093, at *6 n.9, 7–8, and plaintiffs plausibly allege that, in its threat-to-sue letters, SNSC "intentionally misrepresented" that certain time-barred payments were enforceable through foreclosure in order to collect those payments from consumers, *Hartman*, 569 F.3d at 616; *see Michelo*, 419 F. Supp. 3d at 694. Unlike in the cases on which it relies, SNSC has not provided legal authority that even "arguably authorizes" it to enforce those time-barred payments. *Singh*, 683 F. App'x at 78 (citation omitted); *see* SNSC Mot. 18–19.

Accordingly, SNSC's motion to dismiss the GBL § 349 claims is denied.

### III.    SNSC's *Colorado River* Motion

SNSC's motion to stay the case under *Colorado River* is denied.  A motion to dismiss or stay based on the *Colorado River* abstention doctrine is assessed under the same standard as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  *United States v. Blake*, 942 F. Supp. 2d 285, 292 (E.D.N.Y. 2013).

In *Colorado River*, the Supreme Court expanded the doctrine of abstention by recognizing that there are circumstances when federal courts may, "for reasons of wise judicial administration," abstain from exercising jurisdiction "due to the presence of a concurrent state proceeding."  424 U.S. at 818.  But abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  *Id.* at 813 (citation omitted).  As a precondition to abstention, courts in this Circuit determine whether the state and federal proceedings are "parallel."  *See Dittmer v. County of Suffolk*, 146 F.3d 113, 117–18 (2d Cir. 1998) (citation omitted).  Two suits are parallel where the parties are "substantially the same, litigating substantially the same issues in both actions."  *Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006).

SNSC has not established that this case and the foreclosure actions pending in state court are parallel.  SNSC concedes that it is not a party to any pending foreclosure action, *see* SNSC Mot. 19–20, and even though the statute of limitations "is at issue in both cases," that is so "in the context of completely different claims," *Cortes-Goolcharran v. Rosicki, Rosicki & Assocs., P.C.*, No. 17-CV-3976 (FB) (SJB), 2018 WL 3748154, at *4 (E.D.N.Y. Aug. 7, 2018).  Because FDCPA and related GBL claims center on "debt-collection methods," courts in this Circuit often find cases involving such claims to not be parallel with state-court "collection actions involv[ing] the validity

of the underlying debts." *Gold*, 2019 WL 4752093, at *9 n.12 (quoting *Fritz*, 955 F. Supp. 2d at 175); *see, e.g.*, *Leonardo v. Wells Fargo Bank, N.A.*, No. 21-CV-4949 (OEM) (JMW), 2024 WL 4485608, at *15 (E.D.N.Y. Aug. 1, 2024), *report and recommendation adopted*, 2024 WL 4344849 (E.D.N.Y. Sept. 30, 2024); *Cameron*, 998 F. Supp. 2d at 300 n.8; *McCrobie v. Palisades Acquisition XVI, LLC*, 359 F. Supp. 3d 239, 249 (W.D.N.Y. 2019); *see also Abe v. New York Univ.*, No. 14-CV-9323 (RJS), 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016) ("[P]arallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." (citation omitted)).

Even though a state-court determination that plaintiffs' underlying debts are wholly enforceable would undermine their claims here, SNSC Mot. 20, the inverse is not the case—"a determination that [part of each] mortgage is time barred" would not "automatically entitle [plaintiffs] to relief," *Cortes-Goolcharran*, 2018 WL 3748154, at *4; *accord Gold*, 2019 WL 4752093, at *9 n.12; *Fritz*, 955 F. Supp. 2d at 175. This case itself confirms that. SNSC concedes that the foreclosure actions against seven plaintiffs have concluded, *see* SNSC Mot. 19; *see also* Opp'n to SNSC Mot. 20, apparently without any determination on the statute-of-limitations issue worthy of mention in the parties' briefing here.

Accordingly, because SNSC has not shown that the state and federal proceedings are parallel, its motion to stay this case under *Colorado River* is denied.

**CONCLUSION**

Defendants' motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6) are denied, as is SNSC's motion to stay this case under the *Colorado River* abstention doctrine.

SO ORDERED.

  /s/  *Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: April 1, 2025
       Brooklyn, New York